GRIFFIS, P.J.,
for the Court:
¶ 1. Ruth Agnes Crosthwait fell and broke her hip while an inpatient at Trace Regional Hospital. She brought a lawsuit against Southern Health Corporation of Houston, Inc., which owns and operates the hospital, and Marcia Morgan, a registered nurse who is employed by the hospital. Crosthwait alleged that the hospital negligently caused her to fall after a shower in her hospital room. Crosthwait couched her claim as one for “ordinary” negligence, rather than for malpractice. The hospital contended that Crosthwait’s claim was for medical malpractice, in substance, and it sought summary judgment because Crosthwait failed to offer presuit notice, failed to consult with an expert prior to filing suit, and failed to support her claim with expert testimony. The Chickasaw County Circuit Court granted summary judgment to the hospital, and Crosthwait appeals.
FACTS
¶ 2. Crosthwait was admitted to Trace Regional Hospital on May 22, 2008, for treatment of fluctuating blood sugar stemming from diabetes. Crosthwait was eighty-two years of age. She lived alone and generally could walk without assistance, but she sometimes used a quad cane when walking outside. Crosthwait’s attending physician instructed her to ring a bell to have a nurse assist her when she used the restroom, which was attached to her hospital room. Over the course of her stay, Crosthwait followed her doctor’s instructions. The nurses had observed Crosthwait, but they did not physically assist her.
¶ 3. On the afternoon of May 24, Crosth-wait was preparing to leave the hospital, and she decided to take a shower. Crosth-wait called for Morgan, who assisted her with undressing. Crosthwait walked into the bathroom unassisted. Morgan offered Crosthwait a shower stool, which she accepted. Morgan then left and returned with a chair, which she placed in the shower. Morgan then turned on the shower for Crosthwait. While Crosthwait showered, Morgan told Crosthwait she would have to leave to attend another patient. After some time, Morgan returned and turned off the shower. During the shower, the bathroom floor became wet. What happened next was disputed.
¶ 4. According to Crosthwait, water had puddled on the bathroom floor during the shower because the shower curtain was not closed. Crosthwait felt Morgan had been gone for a long time, and Crosthwait had been unable to turn off the water herself or move around in the shower because of the size of the shower chair. When Morgan returned, Crosthwait asked her to turn the water off, which she did. Crosthwait then asked Morgan for a towel, and Morgan handed her one. Crosthwait’s shoes had been on the bathroom floor during the shower, and they were wet. Crosthwait tried to put on the wet shoes, but she could not. She asked Morgan to get some dry shoes, apparently referring to another pair of shoes she had brought with her to the hospital. Morgan stated that she did not have any shoes for Crosthwait. Morgan offered Crosthwait a single towel, which Crosthwait used to dry herself. When Crosthwait was preparing to leave the bathroom, Morgan was standing in the doorway between Crosthwait’s hospital room and the hallway outside. Crosthwait stated, “I need some help — I’ve got to get out of here,” several times, but Morgan did not offer to assist her. Crosthwait then tried to walk back to her bed, but she slipped and fell while passing *1129 through the doorway between the bathroom and the hospital room.
¶ 5. Morgan stated in her deposition that she laid two towels on the floor before Crosthwait started showering. After the shower, Morgan helped Crosthwait dry herself, and Morgan used several more towels to dry the floor. Crosthwait refused to use her shoes, even after Morgan had dried them, so Morgan attempted to lead her back to the bed without them. Morgan took one hand, and Crosthwait used her quad cane with the other. While passing through the doorway from the restroom to the hospital room, which was not wide enough for both women to walk side by side, Crosthwait fell.
¶ 6. It was undisputed that the fall caused Crosthwait significant injury, including a broken hip and a loss of mobility and independence. Crosthwait filed suit against the hospital and Morgan. Crosth-wait’s complaint alleged that the following were the proximate causes of her fall and injuries:
(a) Failure to properly assist [Crosth-wait] in taking a shower, including failure to provide an appropriate shower stool and failure to prevent excessive water from accumulating on the floor outside the shower;
(b) Failure to assist [Crosthwait] in getting out of the shower;
(c) Failure to assist [Crosthwait] as she stepped on the floor while exiting the shower;
(d) Failure to provide [Crosthwait] with proper footwear before she stepped on the wet floor when exiting the shower;
(e) Failure to wipe up the wet floor before [Crosthwait] exited the shower; [and]
(f) Failure to do other reasonable acts necessary to prevent [Crosthwait’s] fall.
¶ 7. After discovery was completed, the hospital filed a motion for summary judgment. The hospital argued that Crosth-wait’s action was for medical malpractice and that summary judgment was proper because, among other things, Crosthwait needed expert testimony to establish the duty of care owed to her by the hospital and to show whether that duty had been breached. Crosthwait responded that the claim was for ordinary negligence, for which expert testimony was not required. The circuit court granted summary judgment to the hospital, and Crosthwait appeals.
STANDARD OF REVIEW
¶ 8. We review a trial court’s grant of summary judgment de novo. Treasure Bay Corp. v. Ricard, 967 So.2d 1235, 1238 (¶ 10) (Miss.2007). This Court “examines all the evidentiary matters before it — admissions in pleadings, answers to interrogatories, depositions, affidavits, etc.” City of Jackson v. Sutton, 797 So.2d 977, 979 (¶ 7) (Miss.2001) (citations omitted). The moving party has the burden of demonstrating that no genuine issue of material fact exists, and the nonmoving party must be given the benefit of doubt concerning the existence of a material fact. Id. “If no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment should be entered in that party’s favor.” Monsanto Co. v. Hall, 912 So.2d 134, 136 (¶ 5) (Miss.2005). “A fact is material if it tends to resolve any of the issues properly raised by the parties.” Moss v. Batesville Casket Co., Inc., 935 So.2d 393, 398 (¶ 16) (Miss.2006) (citation and quotations omitted).
DISCUSSION
¶ 9. It is axiomatic that to recover for negligence, a plaintiff must prove the elements of a negligence claim, which are: (1) duty, (2) breach of duty, (3) causation, and (4) damages. See, e.g., Fisher v. Deer, 942 So.2d 217, 219 (¶ 6) (Miss.Ct.App.2006) (citation omitted). Duty and breach of *1130 that duty establish the negligence, while causation and damages are required to show that the plaintiff is entitled to recover for harm resulting from the negligent act. Id.
¶ 10. Malpractice is a special kind of negligence claim that involves professional services. Malpractice claims generally must be supported by expert testimony to “identify and articulate the requisite standard that was not complied with [and] establish that the failure was the proximate cause, or proximate contributing cause, of the alleged injuries.” Hubbard v. Wansley, 954 So.2d 951, 957 (¶ 12) (Miss.2007) (quoting Barner v. Gorman, 605 So.2d 805, 809 (Miss.1992)). The only exception to the expert-testimony requirement is where the alleged professional negligence is within the scope of a layman’s common knowledge. Powell v. Methodist Health Care-Jackson Hosps., 876 So.2d 347, 348 (¶ 4) (Miss.2004).
1Í11. On appeal, Crosthwait contends that she did not have to offer expert testimony because her claim is only for “ordinary” negligence, not malpractice. To distinguish between malpractice claims and ordinary negligence, a court should consider: “(1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises questions of professional judgment beyond the realm of common knowledge and experience.” 65 C.J.S. Negligence § 160 (2010). While Crosthwait disagrees, this Court finds that her claim arose in the course of professional medical services. Although showering was not necessarily a medical procedure, in this case, Crosthwait was an inpatient at the hospital. Crosthwait’s attending physician had instructed her to seek a nurse’s assistance when using the restroom. When Morgan assisted Crosthwait, she was acting as a registered nurse attending to a patient in her care. Thus, the real question presented by this appeal is whether Crosthwait’s claim raises questions of Morgan’s professional judgment outside a layman’s common knowledge. If so, Crosthwait failed to meet her burden of proof because she did not offer expert testimony establishing Morgan’s duty of care or a breach of that duty.
¶ 12. “Our general rule is that medical negligence may be established only by expert medical testimony, with an exception for instances where a layman can observe and understand the negligence as a matter of common sense and practical experience.” Coleman v. Rice, 706 So.2d 696, 698 (¶ 10) (Miss.1997) (quoting Erby v. N. Miss. Med. Ctr., 654 So.2d 495, 500 (Miss.1995)). Examples of the layman’s exception would be a case involving “the unauthorized and unexplained leaving of an object inside a patient during surgery,” id. at 698 (¶ 11), or a patient being given the wrong medication. Smith ex rel. Smith v. Gilmore Mem’l Hosp., Inc., 952 So.2d 177, 181 (¶ 11) (Miss.2007).
¶ 13. Crosthwait attempts to remove her claim from the realm of medical malpractice by focusing on two alleged negligent acts: Morgan’s selection of the shower stool, which Crosthwait contends was too large for the shower, with arms that prevented the shower curtain from being closed, and Morgan’s failure to dry the floor before Crosthwait tried to walk across it. Crosthwait argues that these claims, despite the hospital setting, are “ordinary” acts that a layman can understand are negligent without expert testimony. Crosthwait analogizes her claim to an “ordinary slip and fall.”
¶ 14. The selection of a shower stool is clearly outside a layman’s common knowledge. Crosthwait argues that the choice was negligent because the stool prevented the shower curtain from being fully closed. But it is apparent that the stool would not be selected simply to fit in the shower, *1131 since its primary purpose would be to provide adequate support for Crosthwait while she showered. A nurse would have to evaluate Crosthwait’s need for support and choose a stool that would satisfy it. If anything, the nurse would have to balance Crosthwait’s needs against the danger posed by the stool not fitting easily in the shower. This calls for professional judgment, and the layman’s exception does not apply to “situations involving judgment calls made by professionals.” Smith, 952 So.2d at 181 (¶ 11).
¶ 15. In Bell v. West Harrison County District, 523 So.2d 1031, 1032 (Miss.1988), Doris Bell was injured when she fell from her hospital bed. She claimed that her fall was a result of the nurse’s failure to raise the rails on the bed. Id. In an issue related to the proper statute of limitations, Bell argued that the nurse’s failure to raise the rails was an act of ordinary negligence that did not involve medical or professional services. Id. at 1032-33. The Mississippi Supreme Court disagreed, stating:
A nurse’s decision as to whether or not bed rails should be utilized entails a degree of knowledge concerning the subject patient’s condition, medication, history, etc. The rails themselves are but another instrumentality by which the safety of patients may be insured. This plainly calls for the rendition of a medical or professional service, even under the most basic rationale. The failure to raise Mrs. Bell’s bed rails may have been a negligent omission on the part of the nurse, but if it were, it was negligence inherently connected with the providing of a professional medical service.
Id. at 1033.
¶ 16. The dissent argues that Crosth-wait does not allege her injury occurred based on the negligent use of a medical device; therefore, her claim is distinguishable from Bell. But Crosthwait testified that Morgan recommended that she utilize a shower stool after Crosthwait entered the shower. Just as in Bell, this decision required that Morgan have a degree of knowledge as to Crosthwait’s medical condition. Morgan decided to have Crosth-wait use the stool even after the stool did not properly fit in the shower, and the shower curtain could not be closed causing the bathroom floor to become wet. Such a decision fell within Morgan’s professional service as a nurse.
¶ 17. Crosthwait’s second contention, that Morgan should have dried the floor for her, is more difficult. It is true, as Crosthwait argues, that a layman can recognize that a wet floor presents some risk of slipping. And the dissent contends that Crosthwait’s injury did not involve an assessment of Crosthwait’s condition. But whether a wet floor creates an unreasonable danger depends on the person trying to walk across it — a healthy individual might be able to dry the floor herself/himself after bathing or safely cross the floor even if it is wet, while a person in poor health might not be able to do either. What assistance Crosthwait needed depended, again, on an evaluation of her medical condition. That required the exercise of professional judgment. Morgan had to considered Crosthwait’s condition in determining the level of assistance Crosth-wait would need to exit the shower and walk across a wet floor.
¶ 18. In support of her argument, Crosthwait cites the following exchange from Morgan’s deposition:[1]
*1132 Q. Now, did you need some special knowledge to know how to put those towels down? Did you have to be a nurse to know how to put the towels down?
A. No.
Q. Okay, did you have to be a nurse to know how to try to lead [Crosth-wait] out and not fall?
A. No.
[[Image here]]
Q. Did you have to know anything as a nurse to do anything that you did in connection with this incident of getting her in and out of the shower?
A. No.
Crosthwait contends that this amounts to an admission that professional judgment is not at issue. We do not agree. The first questions asked Morgan whether one needed to be a nurse to know “how” to place towels on a floor, which is not relevant to the issue at hand. The remaining two questions concern Morgan’s version of the events, but Crosthwait’s allegations of negligence are based on her own account, which is significantly different. Crosth-wait’s complaint is principally addressed to what she alleges Morgan had a duty to do, not what she actually did, according to Crosthwait. Crosthwait suggests in her briefs on appeal that the difference between the accounts is immaterial since both agree Crosthwait fell; but the fact that Morgan failed to prevent Crosthwait from falling is not proof of negligence, in and of itself. Moreover, the final question is vague and was properly objected to by the hospital’s counsel.
¶ 19. After reviewing the record in this case, this Court finds that Crosthwait alleged malpractice and that expert testimony was required to support the cause of action. Consequently, the circuit court did not err in granting summary judgment to the hospital. We therefore affirm.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF CHICKASAW COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
MYERS, ISHEE AND CARLTON, JJ., CONCUR. IRVING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LEE, C.J. MAXWELL, J„ DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LEE, C.J., IRVING, P.J., AND ROBERTS, J. BARNES AND RUSSELL, JJ., NOT PARTICIPATING.

. The hospital's attorney objected to the "form” of each question, but for clarity, we have not included the objections.