ON WRIT OF CERTIORARI
CARLSON, Presiding Justice,
for the Court:
¶ 1. The Circuit Court for the First Judicial District of Chickasaw County, Judge Andrew K. Howorth presiding, granted summary judgment in favor of Southern Health Corporation of Houston, Inc. d/b/a Trace Regional Hospital, and Marcia Morgan, a registered nurse. Aggrieved, Ruth Agnes Crosthwait appealed to this Court, and we assigned this case to the Court of Appeals. In a four-four plurality opinion (two judges not participating), the Court of Appeals affirmed the trial court’s grant of summary judgment. Crosthwait v. Southern Health Corp. of Houston, Inc., 94 So.3d 1126 (Miss.Ct.App.2011), reh’g denied (Sept. 20, 2011). We granted Crosth- *1072 wait’s petition for writ of certiorari. Crosthwait v. Southern Health Corp. of Houston, Inc., 78 So.3d 906 (Miss.2012) (Table).
FACTS AND PROCEEDINGS IN THE TRIAL COURT
¶2. We set out the facts pertinent to today’s discussion. Most of these facts come from the plurality opinion of the Court of Appeals. Crosthwait, 94 So.3d 1126,1128-29 ¶¶ 1-7.
¶ 3. On May 22, 2008, Ruth Agnes Crosthwait was admitted to Trace Regional Hospital for treatment of fluctuating blood sugar stemming from diabetes. Crosthwait was eighty-two years old, lived alone, and generally could walk without assistance. While she was hospitalized, Crosthwait’s attending physician instructed her to ring a bell to have a nurse assist her when she rose from her hospital bed.
¶ 4. On May 24, 2008, Crosthwait was preparing to leave the hospital, and she decided to take a shower. Crosthwait called for Marcia Morgan, a registered nurse, who assisted her with undressing. Crosthwait walked into the bathroom unassisted. Morgan offered Crosthwait a shower stool, which she accepted. Morgan then left and returned with a chair, which she placed in the shower. While Crosth-wait showered, Morgan told Crosthwait she would have to leave to attend another patient. When Morgan returned, she turned off the shower and Crosthwait exited the shower. The facts are disputed as to what happened next.
¶ 5. According to Crosthwait, water had puddled on the bathroom floor during the shower because the shower curtain was not closed. Once Morgan returned from attending the other patient, Crosthwait asked her to turn the water off and she obliged. Crosthwait then asked for a towel, and Morgan handed her one, which Crosthwait used to dry herself. Crosth-wait’s shoes had been on the bathroom floor during the shower, and they were wet. Crosthwait tried to put on the wet shoes, but she could not. When Crosth-wait was preparing to leave the bathroom, Morgan was standing in the doorway between Crosthwait’s hospital room and the hallway outside. Crosthwait stated, “I need some help — I’ve got to get out of here,” several times, but Morgan did not offer to assist her. Crosthwait then tried to walk, barefoot, back to her bed, but she slipped and fell while passing through the doorway between the bathroom and the hospital room.
¶ 6. Morgan’s version of the events differed from that offered by Crosthwait. In her deposition, Morgan stated that she had laid two towels on the floor before Crosth-wait started showering. Morgan claimed that after the shower, she had helped Crosthwait dry herself, and then used several more towels to dry the floor. Crosth-wait refused to use her shoes, even after Morgan had dried them, so Morgan attempted to lead her back to the bed without her shoes. Morgan took one hand, and with the other, Crosthwait used her quad cane. While passing through the doorway from the restroom to the hospital room, which was not wide enough for both women to walk side by side, Crosthwait fell.
¶7. It was undisputed that the fall caused Crosthwait significant injury, including a broken hip and a loss of mobility and independence. Crosthwait filed suit against the hospital and Morgan. Crosth-wait’s complaint alleged that the following were the proximate causes of her fall and injuries: (a) failure to properly assist [Crosthwait] in taking a shower, including failure to provide an appropriate shower stool and failure to prevent excessive water from accumulating on the floor outside the shower; (b) failure to assist [Crosth-wait] in getting out of the shower; (c) *1073 failure to assist [Crosthwait] as she stepped on the floor while exiting the shower; (d) failure to provide [Crosthwait] with proper footwear before she stepped on the wet floor when exiting the shower; (e) failure to wipe up the wet floor before [Crosthwait] exited the shower; [and] (f) failure to do other reasonable acts necessary to prevent [Crosthwait’s] fall.
¶8. The hospital and Morgan filed a motion for summary judgment arguing that Crosthwait’s action was for medical malpractice, and summary judgment was proper because, among other things, Crosthwait needed expert testimony to establish the duty of care owed to her by the hospital and to show whether that duty had been breached. Crosthwait responded that the claim was for ordinary negligence, for which expert testimony was not required. The circuit court granted the hospital’s motion, and Crosthwait appealed.
PROCEEDINGS IN THE COURT OF APPEALS
¶ 9. After a thorough discussion of all the issues, the Court of Appeals’ plurality found:
After reviewing the record in this case, this Court finds that Crosthwait alleged malpractice and that expert testimony was required to support the cause of action. Consequently, the circuit court did not err in granting summary judgment to the hospital.
Crosthwait, 94 So.3d 1126, 1132 ¶ 19. Presiding Judge Irving, in his dissent, opined that even assuming, arguendo, that Morgan’s actions fell within the realm of professional services, the layman’s exception to the generally recognized rule requiring expert testimony to prove medical negligence would apply in Crosthwait’s case, meaning that Crosthwait need only present lay testimony to prove negligence on the part of Morgan, and thus, the hospital. Crosthwait, 94 So.3d 1126, 1132-33 ¶21 (Irving, P.J., dissenting, joined by Lee, C.J.). In a lengthy dissent, Judge Maxwell opined that Crosthwait’s claims should have been considered under ordinary-negligence standards, thus precluding a grant of summary judgment in favor of the hospital and Morgan, because there were genuine issues of material fact which could be resolved only by a trial. Crosthwait, 94 So.3d 1126, 1133-37 ¶¶ 22-42 (Maxwell, J., dissenting, joined by Lee, C.J., Irving, P.J., and Roberts, J.).
DISCUSSION
¶ 10. An appellate court reviews a trial court’s grant of summary judgment de novo. Treasure Bay Corp. v. Ricard, 967 So.2d 1235, 1238 (Miss.2007). Summary judgment should be granted only if no genuine issue of material fact exists. Monsanto Co. v. Hall, 912 So.2d 134, 136 (Miss.2005).
¶ 11. In cases of medical malpractice, a plaintiff must prove the following:
(1) the existence of a duty by the defendant to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury;
(2) a failure to conform to the required standard; and (3) an injury to the plaintiff proximately caused by the breach of such duty by the defendant.
Hubbard v. Wansley, 954 So.2d 951, 956-57 (Miss.2007) (citing Drummond v. Buckley, 627 So.2d 264, 268 (Miss.1993) (citing Burnham v. Tabb, 508 So.2d 1072, 1074 (Miss.1987))). And in proving medical malpractice, expert testimony must be used to show that the requisite standard of care was not followed, and expert testimony must be used to establish that the defendant’s “failure was the proximate cause, or proximate contributing cause” of the plaintiffs alleged injuries. Hubbard, 954 So.2d at 957 (citations omitted). *1074 Where a plaintiff fails to present expert testimony as to the applicable standard of care, breach thereof, and proximate causation, summary judgment is mandated. Smith v. Gilmore Mem’l Hosp., 952 So.2d 177, 180 (Miss.2007).
¶ 12. Crosthwait states that the acts of drying a wet floor and ensuring that hospital patients traverse safely through a known, dangerous condition do not fall within the scope of either a hospital’s licensed activities or Nurse Morgan’s professional services. Instead, Crosthwait argues that these acts fall within the standard of reasonable care incumbent on businesses. The hospital disagrees and argues that Crosthwait’s claim was for medical malpractice under Mississippi Code Section 15-1-36(2) (Rev. 2003).
¶ 13. In determining the nature of Crosthwait’s claim, we note that Mississippi Code Section 15-1-36(1) (Rev. 2003), relating to medical malpractice claims, applies to “injuries or wrongful death arising out of the course of medical, surgical or other professional services!)]” We have held that “a ‘professional service’ involves the application of special skill, knowledge and education arising out of a vocation, calling, occupation or employment.” Burton v. Choctaw County, 730 So.2d 1, 5-6 (¶ 21) (Miss.1997) (citations omitted).
¶ 14. In Bell v. West Harrison County District, 523 So.2d 1031, 1033 (Miss.1988), this Court recognized that “medical or professional services” are not limited to direct interventions such as performing surgery or administering medications, but include all aspects of medical evaluation, treatment, and care that involve the application of special skill or knowledge. Moreover, we noted that a nurse’s decision, based on professional knowledge, falls within the statutory language of “medical, surgical or other professional services)]” See Bell, 523 So.2d at 1033.
¶ 15. This Court previously has held that whether a bath provided to a nursing home resident for purposes other than treatment constituted “nursing services” was “a factual dispute that must be resolved by a jury.” Burton, 730 So.2d, at 4. Here, however, the allegation is that Crosthwait was denied necessary assistance in walking to and from a shower. Crosthwait does not explicitly argue that Morgan’s decisions regarding the shower incident were related to her medical condition or required the application of specialized knowledge or training.
¶ 16. Nevertheless, we find that Morgan’s specialized knowledge or training was called upon in this situation. Most adults need no assistance in walking to and from the shower; However, the record reveals that Crosthwait required such assistance. The determination that Crosth-wait could not safely negotiate her way to and from the shower without assistance required the exercise of professional knowledge and judgment to assess Crosth-wait’s medical condition and consequent physical limitations.
¶ 17. Morgan was not called upon to prevent water from pooling on the floor, but to aid an elderly and fragile patient in walking to and from a shower. Patently, these are not activities which a hospital employee without specialized knowledge or training would be called upon to perform. Thus, we hold that the decision as to whether to provide such assistance involved medical judgment, and the claim thus was one for medical negligence. Contrary to the dissent’s assertion, the determinative factor is not that Morgan’s job title is nurse rather than hospital custodian. Rather, our holding is that Morgan was performing medical services under the meaning of the statute, since her performance required specialized knowledge or training.
*1075 ¶ 18. Our view is supported by this Court’s precedent. In Bell, the case on which the Court of Appeals primarily relied, a patient was injured in a fall after the nursing staff allegedly failed to raise the side rails on the hospital bed in which the patient lay sedated. Bell, 523 So.2d at 1032. The plaintiffs argued that the failure to raise the bed rails was ordinary negligence, but this Court disagreed, holding that the negligent failure to raise the side rails amounted to professional negligence. Id. at 1032-33. The Court stated that the decision on whether to raise the bed rails “entails a degree of knowledge concerning the subject patient’s condition, medication, history, etc .... [t]his plainly calls for the rendition of a medical or professional service, even under the most basic rationale.” Id. at 1033. The decision as to whether a patient required assistance in moving to and from the shower entailed similar professional knowledge and judgment.
¶ 19. Furthermore, the Mississippi Court of Appeals has examined a case that is factually similar to the instant matter. In Lyons v. Biloxi Inc., 925 So.2d 151 (Miss.Ct.App.2006), a patient was hospitalized for hip-replacement surgery, and the next day, the physical therapist determined that the patient was able to walk without the assistance of the walker. The therapist thus had the patient walk to and from the bathroom without using the walker, but on the return trip, the patient fell and dislocated the new hip prosthesis. Lyons, 925 So.2d at 152-53. The plaintiff argued that the physical therapist had committed ordinary negligence, but the Court of Appeals found that the claim was for medical negligence, since, as in Bell, the determination of the degree and nature of the assistance needed by the patient required an evaluation of the patient’s condition; that is, the application of special knowledge. Id. at 155.
¶ 20. The Kentucky Supreme Court confronted a factually similar situation in Ratliff v. Employers’ Liab. Assurance Corp., 515 S.W.2d 225 (Ky.1974). In that case, a patient was in the hospital receiving treatment for severe alcoholism. After obtaining medication at the nurses’ station, the patient began to walk back to his room without assistance, but fell and broke his leg; he then sued the hospital, alleging that the nurses were negligent in failing to assist him in walking back to his room. Ratliff 515 S.W.2d at 227-28. The Kentucky Supreme Court in that case found that determining whether Ratliff “was capable of returning safely from the nurses’ station to his bed required the nurses to exercise their expert professional ability....” Id. at 230. As a result, the claim was held to be one of medical negligence. Id.
¶ 21. We briefly note that Crosthwait urges the application of the factors developed by the Louisiana Supreme Court in Coleman v. Deno, 813 So.2d 303, 315-16 (La.2002). The Court of Appeals has applied that test in two cases,[1] one of which {Chitty) Crosthwait wrongly attributes to this Court. However, the Court of Appeals has considered the Coleman factors “merely ‘for guidance.’ ” Chitty, 16 So.3d at 779 (citing Howell, 1 So.3d at 904). Furthermore, this Court has never adopted the Coleman test. As discussed above, our test has been to determine whether the existence of the duty to act requires the application of professional skill and knowledge. See Bell, 523 So.2d at 1032-3. We consider it significant that the Court of Appeals majority did not ap *1076 ply the Coleman factors in this case. Nor did the Court of Appeals apply that test in Lyons, which also involved allegations that a medical provider failed to provide adequate assistance to the patient while the patient was walking. Today, we decline to adopt the Coleman factors.
¶ 22. We have applied the reasoning of Bell, Lyons, and Ratliff to the instant case. Crosthwait’s allegation is that Nurse Morgan did not provide her with assistance in walking back to her bed from the shower. Morgan asserts that she did provide assistance to Crosthwait. This is a factual dispute which usually would cause a grant of summary judgment to be inappropriate. However, even in accepting Crosthwait’s version of the events leading up to her fall, Crosthwait still was not entitled to a denial of the summary judgment by the trial court. Crosthwait could only have required such assistance if something about her medical condition made her different from a typical person. Crosthwait’s attending physician had instructed her that, during her hospitalization, Crosthwait should ring a bell to have a nurse assist her when she rose from her hospital bed. This decision by the physician unquestionably fell within the realm of medical or professional services set out in Mississippi Code Section 16-1-36(1) (Rev. 2003), as did any action or inaction by Morgan, as a registered nurse charged with Crosth-wait’s care. Thus, on today’s record, any determination on whether Crosthwait could make this walk safely from the bathroom to her bed would require the exercise of professional knowledge and judgment in order to assess her medical condition and consequent physical limitations. As a result, we find that Crosthwait asserted a claim for medical negligence.
¶ 23. It is undisputed that Crosthwait failed to offer pre-suit notice, failed to consult with an expert prior to filing suit, and failed to support her claim with expert testimony. See Miss.Code Ann. § 11-1-58 (Supp.2011). Since Crosthwait’s claim was one of medical negligence, summary judgment of the claim was mandated. See Smith, 952 So.2d at 180. Thus, we find that the trial court did not commit error in granting summary judgment in favor of the hospital and Morgan.
CONCLUSION
¶ 24. Based on our discussion today, the Court of Appeals’ judgment affirming the grant of summary judgment by the Circuit Court for the First Judicial District of Chickasaw County and the judgment of the trial Court are affirmed.
¶ 25. AFFIRMED.
WALLER, C.J., DICKINSON, P.J., RANDOLPH AND PIERCE, JJ„ CONCUR. KING, J„ DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND CHANDLER, JJ. LAMAR, J., NOT PARTICIPATING.

. Chitty v. Terracina, 16 So.3d 774 (Miss.Ct.App.2009); Howell v. Garden Park Cmty. Hosp., 1 So.3d 900 (Miss.Ct.App.2008).