# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-IA-01364-SCT

*JACKSON HMA, LLC d/b/a MERIT HEALTH
CENTRAL f/d/b/a CENTRAL MISSISSIPPI
MEDICAL CENTER*

*v.*

*EVELYN HARRIS, AS THE ADMINISTRATRIX
AND PERSONAL REPRESENTATIVE OF THE
ESTATE OF MELVIN HARRIS*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/15/2016 |
| TRIAL JUDGE: | HON. LARITA M. COOPER-STOKES |
| TRIAL COURT ATTORNEYS: | WARREN LOUIS MARTIN, JR. |
| | STEPHEN P. KRUGER |
| | JOHN W. CHAPMAN |
| | WHITMAN B. JOHNSON, III |
| | BENJAMIN COLLIER LEWIS |
| | SENICA MANUEL TUBWELL |
| COURT FROM WHICH APPEALED: | HINDS COUNTY COUNTY COURT |
| ATTORNEYS FOR APPELLANT: | STEPHEN P. KRUGER |
| | JOHN W. CHAPMAN |
| | THURMAN LAVELLE BOYKIN, III |
| ATTORNEY FOR APPELLEE: | WARREN LOUIS MARTIN, JR. |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | REVERSED AND RENDERED - 02/01/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**KING, JUSTICE, FOR THE COURT:**

¶1.     Jackson HMA moved for summary judgment on Evelyn Harris's medical negligence

claims, arguing that Harris failed to present expert medical testimony in support thereof.  The

trial court denied the motion for summary judgment. Because Harris failed to present sworn expert medical testimony to support her claims, no genuine issue of material fact exists. This Court reverses the trial court's judgment and renders judgment in favor of Jackson HMA.

## FACTS AND PROCEDURAL HISTORY

¶2. On June 18, 2014, Melvin Harris[1] was admitted to the Central Mississippi Medical Center[2] for an altered mental state with combativeness. Mr. Harris had previously been diagnosed with dementia. On June 21, while Mr. Harris was still a patient at the facility, a nurse checked on him at 6:40 p.m. At 7:00 p.m., the nurse checked on Mr. Harris again and found him sitting on his bathroom floor with a laceration to his head. Mr. Harris was sent to the Emergency Room and received staples.

¶3. After sending a notice of claim, Evelyn Harris, as holder of Mr. Harris's power of attorney,[3] filed a complaint against Jackson HMA, Dr. Hursie Davis-Sullivan, and several John Does. The facts of the complaint alleged that Mr. Harris was a patient at the hospital, that he presented to the hospital with a history of advanced dementia and disorientation, and that he "was left alone in his room with no restraints when he got out of bed and suffered a fall which resulted in a laceration to his head." The facts further allege that the defendants "were on actual notice of the Plaintiff's condition and were to have taken any and all

---

[1]To avoid confusion, this opinion will refer to Evelyn Harris as "Harris" and Melvin Harris as "Mr. Harris."

[2]The facility is now doing business as Merit Health Central.

[3]Mr. Harris is now deceased, and Evelyn Harris as administratrix and personal representative of his estate was substituted as a party.

2

corrective measures to ensure the safety of the Plaintiff as well as the hospital staff." Under Count I, for negligence, the complaint alleged that the defendants "possessed a duty of ordinary care (i) to make their premises safe and (ii) to inspect the premises. Defendants breached their duties and were negligent in failing to do what a reasonable, prudent doctor, hospital, and/or health care facility would have done under these circumstances." Count I also alleges medical malpractice, stating that Dr. Davis-Sullivan

> did not do what a reasonable, ordinary doctor would do treating the Plaintiff. His [sic] treatment deviated from the appropriate standard of care. Because of this, Plaintiff suffered a fall which resulted in a laceration to his head. . . . These Defendants knew or should have known after reasonable inquiry that the physical, mental and psychological condition of Plaintiff . . . was not sufficient to allow him to be left unattended.

Count II alleged "Negligence/Medical Malpractice/Respondeate [sic] Superior/Agency" without alleging any specific facts. Count III alleged Premises Liability. The complaint noted the Defendants' duty to the Plaintiff to maintain its property in a reasonably safe condition. It then stated that the defendants "breached their duty by not properly medicating the Plaintiff based on his medical history of dementia and disorientation and by not providing proper measures as to ensure the Plaintiff's safety." Count IV alleged Gross Negligence, without stating specific facts. Count V alleged Res Ipsa Loquitur Liability, stating that "[a]t all relevant times, the instrumentality which caused the harm was under the supervision and/or control of these Defendants" and that "[a]bsent the exercise of reasonable care, the incident which caused the harm would not have occurred."

¶4. After discovery ensued, Jackson HMA filed a motion for summary judgment. It argued that Harris's medical malpractice action should be dismissed because no genuine

3

issue of material fact existed. Jackson HMA emphasized that Harris failed to present any expert testimony to support a claim against Jackson HMA. It also attached an affidavit from its nursing expert, who opined that "the nursing staff of Central acted at all times within the standard of care for nurses in the state of Mississippi treating such a patient as Mr. Harris." Harris responded, noting that Jackson HMA "attack[ed] only Plaintiffs' claim for medical negligence / malpractice." She noted that the complaint alleged general negligence, medical malpractice negligence, *respondeat superior*, premises liability, and *res ipsa loquitur* liability. The response concluded that "[t]o this end, the undersigned counsel will address only the allegations raised as to the medical malpractice negligence cause." Harris attached to her response the Plaintiffs' Expert Designations and Dr. Davis-Sullivan's affidavit. Dr. Davis-Sullivan's affidavit stated that "My treatment of Mr. Harris was, at all times, appropriate, reasonable, and met the standard of care as it relates to physicians such as myself treating patients such as Mr. Harris." The trial court denied Jackson HMA's motion for summary judgment. Jackson HMA filed a petition for interlocutory appeal with this Court, and this Court ordered Harris to respond to the petition. A panel of this Court then granted the petition.

¶5. Jackson HMA argues that "no matter which way the claim is spun," Harris's claim is one of pure medical negligence. Because Harris failed to submit sworn expert testimony in support of her claim, Jackson HMA argues that the trial court should have granted its motion for summary judgment. Harris argues that this appeal violates Mississippi Code Section 11-51-79, that she put forth several claims aside from medical negligence and Jackson HMA

4

only addressed medical negligence, that the expert designation and affidavit of Dr. Davis-Sullivan establish the requisite proof for her medical negligence claim, and that the "layman's exception" to the necessity of medical expert testimony applies.

## ANALYSIS

### 1. Standard of Review

¶6.     This Court reviews a trial court's grant or denial of summary judgment de novo. *Crosthwait v. Southern Health Corp. of Houston, Inc.*, 94 So. 3d 1070, 1073 (Miss. 2012). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact[.]" Miss. R. Civ. P. 56(c).  To prove medical malpractice, the plaintiff must prove a duty to conform to a specific standard of conduct, a failure to conform to that standard, and an injury proximately caused by the breach of duty. *Crosthwait*, 94 So. 3d at 1073.  Expert testimony must be used to establish that the requisite standard of care was not followed and that the failure was the proximate cause of the injury. *Id.*  "Where a plaintiff fails to present expert testimony as to the applicable standard of care, breach thereof, and proximate causation, summary judgment is mandated." *Id.* at 1074. This Court likewise reviews legal issues de novo.  *Caves v. Yarbrough*, 991 So. 2d 142, 146 (Miss. 2008).

### 2. Whether the appeal violates Section 11-51-79.

¶7.     Harris argues that the present appeal violates Mississippi Code Section 11-51-79, which provides that appeals from the law side of county court must be made to the circuit

court. Miss. Code Ann. § 11-51-79 (Rev. 2012). This Court has held that Uniform Rule of County and Circuit Court 4.06 and Mississippi Rule of Appellate Procedure 5 conflict with Section 11-51-79 regarding interlocutory appeals, and that the court's rules trump statutory law. **Brown v. Collections, Inc.**, 188 So. 3d 1171, 1177 (Miss. 2016). This issue is without merit.[4]

### 3. Whether the trial court erred by denying the motion for summary judgment.

¶8. Jackson HMA argues that Harris's "mere reference to inapposite legal theories does not spare her claim from summary judgment." Examining the alleged nonmedical claims in the complaint, all are in actuality based in medical negligence. Harris's general negligence claim alleges that Jackson HMA was "negligent in failing to do what a reasonable, prudent doctor, hospital, and/or health care facility would have done under these circumstances[,]" sounding in medical negligence. Under Count II, Harris alleges "negligence/medical malpractice/respondeate [sic] superior/agency." Clearly, the *respondeat superior* claim and the agency claim stem from the underlying medical negligence claim: the employer is responsible for the alleged medical negligence of its employees or agents under these

---

[4]The dissent argues that we should follow Section 11-51-79 instead of Rule 5. Yet, this Court has decided this issue unanimously as recently as 2016. *See Brown*, 188 So. 3d at 1177 (Regarding Section 11-51-79, "there is obviously a conflict between the statute and the rule-based interlocutory appeal procedure. When such a conflict exists, our court's rules trump statutory law."); *see also Chase Home Fin., L.L.C. v. Hobson*, 81 So. 3d 1097, 1102 (Miss. 2012) ("Mississippi Code Section 11-51-79 has no application on appeals from grants of summary judgment in county court[,]" noting that procedural matters regarding appeals from county court are governed by this Court's rules.) (unanimous opinion); *Sliman v. Nguyen*, 22 So. 3d 1173, 1175 (Miss. 2009) ("While the Legislature has enacted Mississippi Code Section 11-51-79, which pertains to appeals from county court to circuit court, statutes do not provide authority for matters of procedure.") (unanimous opinion).

theories. In her claim for premises liability, Harris specifically alleged that Jackson HMA breached its duty to keep the premises safe "by not properly medicating the Plaintiff based on his medical history of dementia and disorientation and by not providing proper measures as to ensure the Plaintiff's safety." In other words, Harris alleges that premises liability is present because Jackson HMA was medically negligent. Likewise, Harris's gross negligence claim must necessarily have the medical negligence claim as the underlying negligence claim. Last, Harris claims *res ipsa loquitur* liability, claiming that an "instrumentality" caused harm, without identifying what the instrumentality was. Harris alleges that "[a]bsent the exercise of reasonable care, the incident which caused the harm would not have occurred." In her brief, Harris argues that "[t]he use of the bed, room and facility are such that in the ordinary course of things, a patient does not slip and fall absent some act(s) and/or omission(s)." The alleged act or omission and exercise of reasonable care necessarily relate back to the alleged medical negligence, and not to any premises liability claim. Indeed, it is a "well settled rule" that the application of the doctrine of *res ipsa loquitur* is inapplicable to slip-and-fall, premises liability cases. ***Douglas v. Great Atlantic & Pac. Tea Co.***, 405 So. 2d 107, 111 (Miss. 1981). Thus, the "instrumentality" alleged must relate back to the alleged medical negligence. It is clear under the specific facts of this case, with a careful reading of the complaint and briefs, that all the claims are based in medical negligence, despite the labels applied.

¶9. Thus, the question on appeal becomes whether Harris placed into evidence expert testimony sufficient to withstand Jackson HMA's motion for summary judgment. This Court

7

has been clear that an unsworn expert designation, signed only by the attorney, as here, is not sufficient to withstand summary judgment. *Handy v. Madison Cty. Nursing Home*, 192 So. 3d 1005 (Miss. 2016) ("Handy's expert designations were nothing but her own statements of what her expert witnesses would say, signed by Handy's counsel. These statements were not sworn by the experts. Therefore, Handy's submissions were not competent to oppose summary judgment."). Harris's expert designation was not sworn by the experts, and was only signed by Harris's counsel as her representation of what the experts would say. It is not competent to oppose summary judgment.

¶10. Harris also claims that Dr. Davis-Sullivan's affidavit is competent to oppose summary judgment because she opines that her conduct was within the standard of care. Harris claims that this somehow by implication points the finger at the nurses of Jackson HMA. Dr. Davis-Sullivan's affidavit does not set forth the applicable nursing standard of care, does not opine as to a breach thereof, and does not opine as to proximate cause. Harris was required to provide expert testimony to show these elements and did not do so; thus, summary judgment for Jackson HMA was mandated. *See Crosthwait*, 94 So. 3d 1070.

¶11. Harris also claims that the "layman's exception" applies, which provides that expert medical testimony is unnecessary in "instances where a layman can observe and understand the negligence as a matter of common sense and practical experience." *Erby v. N. Miss. Med. Ctr.*, 654 So. 2d 495, 500 (Miss. 1995). The layman's exception clearly does not apply here. This Court has acknowledged that the use of fall precautions is a decision that requires professional skill. *Bell v. West Harrison Cty. Dist.*, 523 So. 2d 1031, 1033 (Miss. 1988) ("A

8

nurse's decision as to whether or not bed rails should be utilized entails a degree of knowledge concerning the subject patient's condition, medication, history, etc.  The rails themselves are but another instrumentality by which the safety of patients may be insured.  This plainly calls for the rendition of a medical or professional service, even under the most basic rationale."); *see also* **Crosthwait**, 94 So. 3d at 1074 ("The determination that Crosthwait could not safely negotiate her way to and from the shower without assistance required the exercise of professional knowledge and judgment to assess Crosthwait's medical condition and consequent physical limitations."  The Court noted that "[m]ost adults need no assistance in walking to and from the shower.").  The decision whether and how to keep a patient in bed or from falling is necessarily one that requires professional knowledge and judgment and it necessitates expert medical testimony.

## CONCLUSION

¶12.    Harris's claim is one of medical negligence.  Harris provided no sworn expert testimony to establish the applicable standard of care, breach thereof, and proximate cause of the resulting injury.  Consequently, no genuine issue of material fact exists, and the trial court erred by denying Jackson HMA's motion for summary judgment.  This Court reverses the trial court's order and renders judgment in favor of Jackson HMA.

¶13.  **REVERSED AND RENDERED.**

**WALLER, C.J., KITCHENS, P.J., MAXWELL AND CHAMBERLIN, JJ., CONCUR.  COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J., AND ISHEE, J.  BEAM, J., NOT PARTICIPATING.**

**COLEMAN, JUSTICE, DISSENTING:**

9

¶14. Mississippi's Constitution of 1890 gives plenary power to the Legislature to set the jurisdiction of the Mississippi Supreme Court. The Constitution likewise explicitly empowers the Legislature to set the appellate jurisdiction of circuit courts. Our rules indeed trump statutes on matters of procedure, but they cannot trump the Constitution on matters of jurisdiction. I would dismiss the appeal for lack of jurisdiction. Accordingly, and with respect, I dissent.

**I. Mississippi's Constitution of 1890 grants plenary power over Supreme Court jurisdiction to the Legislature.**

¶15. Until January 3, 1984, Section 146 of the Mississippi Constitution of 1890 read, "The Supreme Court shall have such jurisdiction as properly belongs to a court of appeals." However, Section 146 was then amended to read, in pertinent part, "The Supreme Court shall have such jurisdiction as properly belongs to a court of appeals and *shall exercise no jurisdiction on matters other than those specifically provided* by this Constitution or by general law." By its plain meaning, the language added in 1984 limits Supreme Court jurisdiction to matters *specifically* provided by the Constitution itself or general law. Pursuant to the above-described amendment, the Legislature has "plenary power" over appellate jurisdiction. ***Dialysis Solutions, LLC v. Miss. State Dep't of Health***, 96 So. 3d 713, 716-717 (¶ 8) (Miss. 2012).

¶16. The Constitution of 1890 also provides explicit direction regarding the power of the Legislature to set the appellate jurisdiction of circuit courts. Article 6, Section 156 provides, "The circuit court shall have original jurisdiction in all matters civil and criminal in this state

10

not vested by this Constitution in some other court, and *such appellate jurisdiction as shall be prescribed by law.*" (Emphasis added.)

¶17.    In Mississippi Code Section 11-51-79, the Mississippi Legislature prescribed appellate jurisdiction in Mississippi's circuit courts over appeals from county courts. Among other things, it prohibits interlocutory appeals from county court and prescribes that appeals from the "law side" of county courts be presented to the circuit court. Pursuant to Section 156 of the Constitution, the statute is a wholly constitutional exercise of Legislative authority to set appellate jurisdiction in the circuit courts. Pursuant to Section 11-51-79's prohibition against interlocutory appeals from county court and directive that appeals of cases sounding in law from county court be filed in the circuit court, we have no jurisdiction over the instant appeal and accordingly should dismiss it.

¶18.    ***Brown v. Collections, Inc.***, 188 So. 3d 1171 (Miss. 2016), cited by the majority for its holding that Section 11-51-79 must give way to various rules of court procedure with which it conflicts, contains no discussion of the above-described constitutional grant of authority to the Legislature to set appellate jurisdiction in both the circuit courts and the Mississippi Supreme Court. Although ***Brown*** was a unanimous decision in which I concurred, I would now overrule it. Pursuant to the separation of the powers exercised by the three branches of Mississippi's government, and as held in ***Newell v. State***, 308 So. 2d 71 (Miss. 1975), the courts have sole authority to set rules of court procedure. However, the power to set appellate jurisdiction in the circuit court and, pursuant to Section 146 quoted above, in the Supreme Court, rests with the Legislature and, as to Supreme Court jurisdiction,

11

specific provisions of the Constitution. No specific provision in the law or the Constitution grants jurisdiction to the Supreme Court over appeals from county courts. The ***Brown*** holding, as applied today, gives the courts the power to set their own jurisdiction over appeals with rules of procedure, which runs directly contrary to the applicable constitutional provisions.

¶19.   Pursuant to the foregoing reasoning, I would dismiss the instant appeal for lack of jurisdiction.

**RANDOLPH, P.J., AND ISHEE, J., JOIN THIS OPINION.**