KING, JUSTICE, FOR THE COURT:
 

 ¶ 1. Jackson HMA moved for summary judgment on Evelyn Harris's medical negligence claims, arguing that Harris failed to present expert medical testimony in support thereof. The trial court denied the motion for summary judgment. Because Harris failed to present sworn expert medical testimony to support her claims, no genuine issue of material fact exists. This Court reverses the trial court's judgment
 and renders judgment in favor of Jackson HMA.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. On June 18, 2014, Melvin Harris
 
 [1]
 
 was admitted to the Central Mississippi Medical Center
 
 [2]
 
 for an altered mental state with combativeness. Mr. Harris had previously been diagnosed with dementia. On June 21, while Mr. Harris was still a patient at the facility, a nurse checked on him at 6:40 p.m. At 7:00 p.m., the nurse checked on Mr. Harris again and found him sitting on his bathroom floor with a laceration to his head. Mr. Harris was sent to the Emergency Room and received staples.
 

 ¶ 3. After sending a notice of claim, Evelyn Harris, as holder of Mr. Harris's power of attorney,
 
 [3]
 
 filed a complaint against Jackson HMA, Dr. Hursie Davis-Sullivan, and several John Does. The facts of the complaint alleged that Mr. Harris was a patient at the hospital, that he presented to the hospital with a history of advanced dementia and disorientation, and that he "was left alone in his room with no restraints when he got out of bed and suffered a fall which resulted in a laceration to his head." The facts further allege that the defendants "were on actual notice of the Plaintiff's condition and were to have taken any and all corrective measures to ensure the safety of the Plaintiff as well as the hospital staff." Under Count I, for negligence, the complaint alleged that the defendants "possessed a duty of ordinary care (i) to make their premises safe and (ii) to inspect the premises. Defendants breached their duties and were negligent in failing to do what a reasonable, prudent doctor, hospital, and/or health care facility would have done under these circumstances." Count I also alleges medical malpractice, stating that Dr. Davis-Sullivan
 

 did not do what a reasonable, ordinary doctor would do treating the Plaintiff. His [sic] treatment deviated from the appropriate standard of care. Because of this, Plaintiff suffered a fall which resulted in a laceration to his head .... These Defendants knew or should have known after reasonable inquiry that the physical, mental and psychological condition of Plaintiff ... was not sufficient to allow him to be left unattended.
 

 Count II alleged "Negligence/Medical Malpractice/Respondeate [sic] Superior/Agency" without alleging any specific facts. Count III alleged Premises Liability. The complaint noted the Defendants' duty to the Plaintiff to maintain its property in a reasonably safe condition. It then stated that the defendants "breached their duty by not properly medicating the Plaintiff based on his medical history of dementia and disorientation and by not providing proper measures as to ensure the Plaintiff's safety." Count IV alleged Gross Negligence, without stating specific facts. Count V alleged Res Ipsa Loquitur Liability, stating that "[a]t all relevant times, the instrumentality which caused the harm was under the supervision and/or control of these Defendants" and that "[a]bsent the exercise of reasonable care, the incident which caused the harm would not have occurred."
 

 ¶ 4. After discovery ensued, Jackson HMA filed a motion for summary judgment.
 

 It argued that Harris's medical malpractice action should be dismissed because no genuine issue of material fact existed. Jackson HMA emphasized that Harris failed to present any expert testimony to support a claim against Jackson HMA. It also attached an affidavit from its nursing expert, who opined that "the nursing staff of Central acted at all times within the standard of care for nurses in the state of Mississippi treating such a patient as Mr. Harris." Harris responded, noting that Jackson HMA "attack[ed] only Plaintiffs' claim for medical negligence/malpractice." She noted that the complaint alleged general negligence, medical malpractice negligence,
 
 respondeat superior
 
 , premises liability, and
 
 res ipsa loquitur
 
 liability. The response concluded that "[t]o this end, the undersigned counsel will address only the allegations raised as to the medical malpractice negligence cause." Harris attached to her response the Plaintiffs' Expert Designations and Dr. Davis-Sullivan's affidavit. Dr. Davis-Sullivan's affidavit stated that "My treatment of Mr. Harris was, at all times, appropriate, reasonable, and met the standard of care as it relates to physicians such as myself treating patients such as Mr. Harris." The trial court denied Jackson HMA's motion for summary judgment. Jackson HMA filed a petition for interlocutory appeal with this Court, and this Court ordered Harris to respond to the petition. A panel of this Court then granted the petition.
 

 ¶ 5. Jackson HMA argues that "no matter which way the claim is spun," Harris's claim is one of pure medical negligence. Because Harris failed to submit sworn expert testimony in support of her claim, Jackson HMA argues that the trial court should have granted its motion for summary judgment. Harris argues that this appeal violates Mississippi Code Section 11-51-79, that she put forth several claims aside from medical negligence and Jackson HMA only addressed medical negligence, that the expert designation and affidavit of Dr. Davis-Sullivan establish the requisite proof for her medical negligence claim, and that the "layman's exception" to the necessity of medical expert testimony applies.
 

 ANALYSIS
 

 1. Standard of Review
 

 ¶ 6. This Court reviews a trial court's grant or denial of summary judgment de novo.
 
 Crosthwait v. Southern Health Corp. of Houston, Inc.
 
 ,
 
 94 So.3d 1070
 
 , 1073 (Miss. 2012). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact[.]" Miss. R. Civ. P. 56(c). To prove medical malpractice, the plaintiff must prove a duty to conform to a specific standard of conduct, a failure to conform to that standard, and an injury proximately caused by the breach of duty.
 
 Crosthwait
 
 ,
 
 94 So.3d at 1073
 
 . Expert testimony must be used to establish that the requisite standard of care was not followed and that the failure was the proximate cause of the injury.
 

 Id.
 

 "Where a plaintiff fails to present expert testimony as to the applicable standard of care, breach thereof, and proximate causation, summary judgment is mandated."
 

 Id.
 

 at 1074
 
 . This Court likewise reviews legal issues de novo.
 
 Caves v. Yarbrough
 
 ,
 
 991 So.2d 142
 
 , 146 (Miss. 2008).
 

 2. Whether the appeal violates Section 11-51-79.
 

 ¶ 7. Harris argues that the present appeal violates Mississippi Code Section 11-51-79, which provides that appeals from the law side of county court must be made to the circuit court.
 
 Miss. Code Ann. § 11-51-79
 
 (Rev. 2012). This Court has
 held that Uniform Rule of County and Circuit Court 4.06 and Mississippi Rule of Appellate Procedure 5 conflict with Section 11-51-79 regarding interlocutory appeals, and that the court's rules trump statutory law.
 
 Brown v. Collections, Inc.
 
 ,
 
 188 So.3d 1171
 
 , 1177 (Miss. 2016). This issue is without merit.
 
 [4]
 

 3. Whether the trial court erred by denying the motion for summary judgment.
 

 ¶ 8. Jackson HMA argues that Harris's "mere reference to inapposite legal theories does not spare her claim from summary judgment." Examining the alleged nonmedical claims in the complaint, all are in actuality based in medical negligence. Harris's general negligence claim alleges that Jackson HMA was "negligent in failing to do what a reasonable, prudent doctor, hospital, and/or health care facility would have done under these circumstances[,]" sounding in medical negligence. Under Count II, Harris alleges "negligence/medical malpractice/respondeate [sic] superior/agency." Clearly, the
 
 respondeat superior
 
 claim and the agency claim stem from the underlying medical negligence claim: the employer is responsible for the alleged medical negligence of its employees or agents under these theories. In her claim for premises liability, Harris specifically alleged that Jackson HMA breached its duty to keep the premises safe "by not properly medicating the Plaintiff based on his medical history of dementia and disorientation and by not providing proper measures as to ensure the Plaintiff's safety." In other words, Harris alleges that premises liability is present because Jackson HMA was medically negligent. Likewise, Harris's gross negligence claim must necessarily have the medical negligence claim as the underlying negligence claim. Last, Harris claims
 
 res ipsa loquitur
 
 liability, claiming that an "instrumentality" caused harm, without identifying what the instrumentality was. Harris alleges that "[a]bsent the exercise of reasonable care, the incident which caused the harm would not have occurred." In her brief, Harris argues that "[t]he use of the bed, room and facility are such that in the ordinary course of things, a patient does not slip and fall absent some act(s) and/or omission(s)." The alleged act or omission and exercise of reasonable care necessarily relate back to the alleged medical negligence, and not to any premises liability claim. Indeed, it is a "well settled rule" that the application of the doctrine of
 
 res ipsa loquitur
 
 is inapplicable to slip-and-fall, premises liability cases.
 
 Douglas v. Great Atlantic & Pac. Tea Co.
 
 ,
 
 405 So.2d 107
 
 , 111 (Miss. 1981). Thus, the "instrumentality" alleged must relate back to the alleged medical negligence. It is clear under the specific facts of this case, with a careful reading of the complaint and briefs, that all the claims are based in
 medical negligence, despite the labels applied.
 

 ¶ 9. Thus, the question on appeal becomes whether Harris placed into evidence expert testimony sufficient to withstand Jackson HMA's motion for summary judgment. This Court has been clear that an unsworn expert designation, signed only by the attorney, as here, is not sufficient to withstand summary judgment.
 
 Handy v. Madison Cty. Nursing Home
 
 ,
 
 192 So.3d 1005
 
 (Miss. 2016) ("Handy's expert designations were nothing but her own statements of what her expert witnesses would say, signed by Handy's counsel. These statements were not sworn by the experts. Therefore, Handy's submissions were not competent to oppose summary judgment."). Harris's expert designation was not sworn by the experts, and was only signed by Harris's counsel as her representation of what the experts would say. It is not competent to oppose summary judgment.
 

 ¶ 10. Harris also claims that Dr. Davis-Sullivan's affidavit is competent to oppose summary judgment because she opines that her conduct was within the standard of care. Harris claims that this somehow by implication points the finger at the nurses of Jackson HMA. Dr. Davis-Sullivan's affidavit does not set forth the applicable nursing standard of care, does not opine as to a breach thereof, and does not opine as to proximate cause. Harris was required to provide expert testimony to show these elements and did not do so; thus, summary judgment for Jackson HMA was mandated.
 
 See
 

 Crosthwait
 
 ,
 
 94 So.3d 1070
 
 .
 

 ¶ 11. Harris also claims that the "layman's exception" applies, which provides that expert medical testimony is unnecessary in "instances where a layman can observe and understand the negligence as a matter of common sense and practical experience."
 
 Erby v. N. Miss. Med. Ctr.
 
 ,
 
 654 So.2d 495
 
 , 500 (Miss. 1995). The layman's exception clearly does not apply here. This Court has acknowledged that the use of fall precautions is a decision that requires professional skill.
 
 Bell v. West Harrison Cty. Dist.
 
 ,
 
 523 So.2d 1031
 
 , 1033 (Miss. 1988) ("A nurse's decision as to whether or not bed rails should be utilized entails a degree of knowledge concerning the subject patient's condition, medication, history, etc. The rails themselves are but another instrumentality by which the safety of patients may be insured. This plainly calls for the rendition of a medical or professional service, even under the most basic rationale.");
 
 see also
 

 Crosthwait
 
 ,
 
 94 So.3d at 1074
 
 ("The determination that Crosthwait could not safely negotiate her way to and from the shower without assistance required the exercise of professional knowledge and judgment to assess Crosthwait's medical condition and consequent physical limitations." The Court noted that "[m]ost adults need no assistance in walking to and from the shower."). The decision whether and how to keep a patient in bed or from falling is necessarily one that requires professional knowledge and judgment and it necessitates expert medical testimony.
 

 CONCLUSION
 

 ¶ 12. Harris's claim is one of medical negligence. Harris provided no sworn expert testimony to establish the applicable standard of care, breach thereof, and proximate cause of the resulting injury. Consequently, no genuine issue of material fact exists, and the trial court erred by denying Jackson HMA's motion for summary judgment. This Court reverses the trial court's order and renders judgment in favor of Jackson HMA.
 

 ¶ 13.
 
 REVERSED AND RENDERED.
 

 WALLER, C.J., KITCHENS, P.J., MAXWELL AND CHAMBERLIN, JJ., CONCUR. COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J., AND ISHEE, J. BEAM, J., NOT PARTICIPATING.
 

 To avoid confusion, this opinion will refer to Evelyn Harris as "Harris" and Melvin Harris as "Mr. Harris."
 

 The facility is now doing business as Merit Health Central.
 

 Mr. Harris is now deceased, and Evelyn Harris as administratrix and personal representative of his estate was substituted as a party.
 

 The dissent argues that we should follow Section 11-51-79 instead of Rule 5. Yet, this Court has decided this issue unanimously as recently as 2016.
 
 See
 

 Brown
 
 ,
 
 188 So.3d at 1177
 
 (Regarding Section 11-51-79, "there is obviously a conflict between the statute and the rule-based interlocutory appeal procedure. When such a conflict exists, our court's rules trump statutory law.");
 
 see also
 

 Chase Home Fin., L.L.C. v. Hobson
 
 ,
 
 81 So.3d 1097
 
 , 1102 (Miss. 2012) ("Mississippi Code Section 11-51-79 has no application on appeals from grants of summary judgment in county court[,]" noting that procedural matters regarding appeals from county court are governed by this Court's rules.) (unanimous opinion);
 
 Sliman v. Nguyen
 
 ,
 
 22 So.3d 1173
 
 , 1175 (Miss. 2009) ("While the Legislature has enacted Mississippi Code Section 11-51-79, which pertains to appeals from county court to circuit court, statutes do not provide authority for matters of procedure.") (unanimous opinion).