654 So.2d 495 (1995)
Linder ERBY
v.
NORTH MISSISSIPPI MEDICAL CENTER.
No. 91-CA-00920-SCT.
Supreme Court of Mississippi.
March 30, 1995.
*496 Dorothy Winston-Colom, Wilbur O. Colom, Colom & Colom, Columbus, for appellant.
L.F. Sams, Jr., John G. Wheeler, Mitchell McNutt Threadgill Smith & Sams, Firm, Tupelo, for appellee.
Before PRATHER, P.J., and PITTMAN and SMITH, JJ.
SMITH, Justice, for the Court:
On August 26, 1987, J.C. Cannon was admitted to North Mississippi Medical Center by Dr. John W. Cox for further evaluation of chronic renal failure. Cannon had a history of "insulin dependent diabetes mellitus" of over thirty (30) years duration. Following a surgical procedure for insertion of an AV Fistula and a catheter for kidney dialysis purposes, Cannon became disoriented and comatose. On September 3, 1987, Cannon died of "cerebral vascular accident," "diabetes," and "chronic renal failure."
Linder Cannon Erby, Cannon's daughter, filed a medical negligence suit against certain physicians, unknown nurses and North Mississippi Medical Center. Summary judgment was granted in favor of the nurses and North Mississippi Medical Center.
Aggrieved, Linder Cannon Erby, hereinafter "Erby," appeals to this Court from a summary judgment entered against her by *497 the Circuit Court of Lee County in favor of North Mississippi Medical Center, hereinafter "NMMC," and assigns as error the following:
I. WHETHER THE TRIAL COURT ERRED IN GRANTING NMMC'S MOTION FOR SUMMARY JUDGMENT BECAUSE THERE EXISTED GENUINE ISSUES OF MATERIAL FACT AND NMMC WAS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW.
II. WHETHER THE TRIAL COURT ERRED IN GRANTING NMMC'S MOTION FOR A PROTECTIVE ORDER.
This Court is called upon to determine whether Erby produced sufficiently significant and probative expert medical testimony establishing that the failure of the nursing staff to properly monitor Cannon's level of blood sugar caused or contribute to Cannon's death.
The medical proof was sufficiently significant and probative with respect to a deviation by the nursing staff from the usual and accepted standard of care. The affidavit of Charlene Byrd, Erby's expert nurse, established that the failure to monitor Cannon's blood sugar following his surgery was a major deviation from the accepted standard of care of nursing. The report of Dr. Michael H. Koch, Erby's medical expert, although replete with references to deviations by the attending physicians from accepted standards of care, also indicated that Cannon needed "extremely close nursing care." Dr. Koch specifically referred to the lack of monitoring of the blood sugar level as a deviation from the acceptable standards of care. Erby's affidavit states that despite her numerous complaints to nurses, post surgery, that she was concerned about Cannon's blood sugar, no blood sugar testing was performed.
Erby's Supplemental Response exhibited the death certificate and the medical records of Cannon, which showed cause of death as cerebral vascular accident due to, or as a consequence of, diabetes. The deposition of Dr. Wooldridge revealed that a standing hospital order existed for nurses to monitor and test blood sugar level. Dr. Hamilton's deposition indicated that a diabetic coma was one of the two possible causes of Cannon's death.
This Court's recent case, Palmer v. Anderson Infirmary Benevolent Association DBA Jeff Anderson Regional Medical Center, No. 91-CA-00654, ___ So.2d ___ (Miss. Feb. 23, 1995), favors reversal of this case on the ground that summary judgment was inappropriate. Erby has presented factors much stronger than those presented in Palmer, where the single violation of a minimum standard operating rule of Mississippi hospitals was held to establish a breach of duty and causal connection sufficient to avoid summary judgment.
There is clearly a disputed issue of material fact as to the cause of Cannon's death and Erby established sufficient significant and probative proof of proximate causation to avoid summary judgment. Also, the trial court abused its judicial discretion in sustaining NMMC's motion for a protective order, closing the record on their motion for summary judgment. We must reverse and remand.

STATEMENT OF FACTS
On August 26, 1987, J.C. Cannon, the 62-year-old father of Linder Cannon Erby, was admitted to NMMC by Dr. John W. Cox for further evaluation of chronic renal failure. Cannon had a previous history of "insulin dependent diabetes mellitus" of over thirty (30) years duration.
During his stay as an inpatient at NMMC, Cannon was diagnosed, treated, and cared for by several independent physicians, including the defendant/physicians named in Erby's Complaint. Various tests, procedures, and diagnostic techniques were ordered for Cannon. Dr. Cox ordered Cannon's insulin on admission and verbally ordered that the insulin be held in abeyance pending testing and other diagnostic procedures, giving such orders each day for that day only.
On August 29, 1987, following a surgical procedure performed under local anesthesia for insertion of an AV Fistula and a catheter for kidney dialysis purposes, Cannon became disoriented and comatose.
*498 On September 3, 1987, Cannon died. The Certificate of Death reflects the following cause(s) of death: "Cerebral vascular accident", "diabetes", and "chronic renal failure." An autopsy to pinpoint the exact cause of death was never performed.
According to Cannon's hospital records, the admitting diagnosis was "chronic renal failure." Listed under "secondary diagnosis and/or complications" was the following: "DM" (diabetes mellitus) and "diffuse cerebral insult of undetermined etiology."
On August 25, 1989, Cannon's daughter, Erby, commenced an action for medical negligence by filing suit against NMMC and four physicians, namely: Dr. John W. Cox, Dr. Thomas D. Wooldridge, Dr. Jimmy L. Hamilton, and Dr. James M. Cooper. Erby alleged that these defendants negligently and carelessly treated, cared for and performed surgery upon her father. The claim against NMMC was based on the theory that the nurses who failed to monitor Cannon's blood sugar were acting as agents, servants or employees of NMMC and that they failed to exercise the standard of care required of hospital personnel toward their patients.
NMMC filed its Separate Answer and Defenses to Erby's Complaint on March 9, 1990. It denied any professional negligence by act or omission on the part of its nursing staff and any causal connection between its care and treatment of Cannon and his death.
On December 21, 1990, NMMC filed a motion for summary judgment on the basis that Erby had an inadequate evidentiary foundation to sustain her claim against NMMC. On April 5, 1991, Erby filed her response in opposition and denied the allegations of NMMC's motion. In support of her response in opposition, Erby offered her own affidavit, the expert witness report of Dr. Koch, the unexecuted affidavit of Charlene Byrd, R.N., and excerpts from the deposition of Dr. Wooldridge. Byrd's original executed affidavit had been lost in the mail. On April 25, 1991, Erby filed an original, executed affidavit of Charlene Byrd with an attached resume' of Byrd's qualifications.
On May 2, 1991, the trial court heard arguments of counsel in support of and in response to NMMC's motion for summary judgment. Prior to the hearing, counsel for NMMC agreed to allow the deposition transcripts of the defendant/physicians to be filed as a part of the record.
On May 24, 1991, Erby filed a Supplemental Response Opposing the Motion for Summary Judgment and attaching thereto the certificate of death of Cannon, the NMMC medical records of Cannon, the deposition of Dr. Thomas D. Wooldridge, the deposition of Dr. John W. Cox, and the deposition of Dr. James Cooper. In addition, Erby requested leave of court to submit additional affidavits and depositions into the record in support of a newly discovered claim of negligence against NMMC allegedly arising out of conduct of a nurse anesthetist whom Erby thought to be an employee of NMMC.
On June 5, 1991, NMMC objected to Erby's attempt to open the record indefinitely for supplemental affidavits and depositions in support of a previously unidentified claim.
On June 13, 1991, NMMC filed a motion for protective order seeking protection from the noticed depositions to be taken by Erby in support of her newly discovered claim.
On July 16, 1991, the court entered an order sustaining NMMC's motion for protective order, thereby staying the subject depositions until the court ruled on NMMC's outstanding motion for summary judgment.
Finally, on August 22, 1991, the trial judge entered an order granting summary judgment in favor of NMMC. The court concluded "that there is no genuine issue as to any material fact respecting [Erby's] claims against NMMC and NMMC is entitled to judgment as a matter of law." The court further held "there is no just reason for delay of a final judgment being entered in this cause pursuant to the provisions of Rule 54(b) of the Mississippi Rules of Civil Procedure."

DISCUSSION
This Court must determine whether Erby created a triable issue of material fact regarding her claim that NMMC nurses deviated from the applicable standard of care in failing to monitor Cannon's blood sugar on *499 August 29, 1987, from 11:00 a.m. until 8:15 p.m. Also at issue is whether Erby produced sufficient competent evidence indicating that failure of NMMC nurses proximately caused or contributed to the death of her father. Proximate causation is an essential ingredient of a claim of medical negligence. Palmer v. Biloxi Regional Medical Center, Inc., 564 So.2d 1346, 1355 (Miss. 1990).

The Standard for Summary Judgment
Rule 56(c) of the Miss.R.Civ.P. (1982) permits summary judgment on claims where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. The rule provides, inter alia, that summary judgment shall be entered by a trial judge "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."
A motion for summary judgment is the functional equivalent of a request for a peremptory instruction. It merely occurs at an earlier stage in the life of a civil action. Sanford v. Federated Guaranty Insurance Company, 522 So.2d 214, 217 (Miss. 1988); Brown v. Credit Center, Inc., 444 So.2d 358, 362 (Miss. 1983).
The burden of demonstrating that no genuine issue of material fact exists to be tried is on the moving party, and the non-movant should be given the benefit of every reasonable doubt. Tucker v. Hinds County, 558 So.2d 869, 872 (Miss. 1990). "All that is required of a non-movant to survive a motion for summary judgment is to establish a genuine issue of material fact by the means available under the rule." Lyle v. Mladinich, 584 So.2d 397, 398 (Miss. 1991). All evidentiary matters are viewed in the light most favorable to the party against whom the motion has been made. Palmer v. Biloxi Regional Medical Center, Inc., 564 So.2d at 1354.
The focal point of our standard for summary judgment is on material facts. In Shaw v. Burchfield, 481 So.2d 247, 252 (Miss. 1985), we said:
The summary judgment movant has a burden of persuasion; a burden to establish that there is no genuine issue of material fact to be tried. Pearl River County Board v. South East Collection, 459 So.2d 783, 785 (Miss. 1984); Brown v. Credit Center, Inc. 444 So.2d 358, 362 (Miss. 1983). The party opposing the motion must rebut, if he is to avoid entry of an adverse judgment, by bringing forth probative evidence legally sufficient to make apparent the existence of triable fact issues. Smith v. First Federal Savings and Loan Association of Grenada, 460 So.2d 786, 792 (Miss. 1984).
Of importance here is the language of the rule authorizing summary judgment "where there is no genuine issue of material fact." The presence of fact issues in the record does not per se entitle a party to avoid summary judgment. The court must be convinced that the factual issue is a material one, one that matters in an outcome determinative sense. As the extensive record in this case has been considered, as well as the persuasive and articulate briefs of counsel, we have kept ever before us that basic tenet of Rule 56 theology that the existence of a hundred contested issues of fact will not thwart summary judgment where there is no genuine dispute regarding the material issues of fact.

Finally, this Court conducts de novo review of a lower court's grant of summary judgment. Daniels v. GNB, Inc., 629 So.2d 595, 599 (Miss. 1993); McMichael v. Nu-Way Steel and Supply, Inc., 563 So.2d 1371, 1374 (Miss. 1990); Newell v. Hinton, 556 So.2d 1037, 1041 (Miss. 1990); Tucker v. Hinds County, 558 So.2d at 873, citing Short v. Columbus Rubber & Gasket Co., 535 So.2d 61 (Miss. 1988). The trial judge's decision will be reversed if a triable issue of fact exists; otherwise, the decision of the lower court will be affirmed. Brown v. Credit Center, Inc., 444 So.2d 358 (Miss. 1983).
In summary, the trial court is not permitted to try issues of fact on a Rule 56 motion; it may only determine whether or not there are issues to be tried. "All motions for summary judgment should be viewed with great skepticism and if the trial court is *500 to err, it is better to err on the side of denying the motion." Mink v. Andrew Jackson Casualty Ins. Co., 537 So.2d 431, 433 (Miss. 1988) quoting Ratliff v. Ratliff, 500 So.2d 981 (Miss. 1986).
This Court, on numerous occasions, has recognized the correctness of a trial court's decision to extinguish by summary judgment or directed verdict a claim of medical negligence prior to submission of the case to a jury. In Boyd v. Lynch, 493 So.2d 1315, 1318 (Miss. 1986), this Court stated:
Also absent in this record is any proof of causal connection between the alleged acts of negligence of the doctor and the cause of death of the infant, an essential ingredient in a negligence case.
The plaintiffs' case failed to show that the doctor defendant failed to act in accord with a reasonable standard of care of a general practitioner that resulted in the child's death. Looking to the record the trial court's award of a directed verdict for Dr. Lynch is proper in this case.
"[I]n a summary judgment proceeding, the plaintiff must rebut the defendant's claim (i.e., that no genuine issue of material fact exists) by producing supportive evidence of significant and probative value; this evidence must show that the defendant breached the established standard of care and that such breach was the proximate cause of [plaintiff's] injury." Palmer v. Biloxi Regional Medical Center, Inc., 564 So.2d at 1355.
With specific reference to hospitals, this Court in Boyd articulated their scope of liability:
A hospital may also be liable under other legal theories, such as negligence, contract, or expressed warranty. P. Lasky, 11B Hospital Law Manual, Principles of Hospital Liability, (1986).
In order to prevail in a suit based on the negligence of a hospital or of an employee whose liability will be imputed to the hospital, the plaintiff must satisfy four elements. First, it must be shown that the defendant had a duty to act in accordance with a standard of reasonable care so as to prevent injury to a foreseeable plaintiff. Second, the plaintiff must demonstrate the defendant's failure to conform to the applicable standard of care. This element is referred to as the breach of duty. Third, the plaintiff must prove that the defendant's breach of duty was the proximate cause of the plaintiff's injury... .
Finally, the plaintiff must show that he or she suffered actual harm or injury as a result of the defendant's negligent conduct.
Id. § 1-1, 1.
A hospital may be subject to liability for its own acts of negligence toward patients and others, but also, it may be liable where the negligence of its health care personnel is imputed to the hospital under an agency theory.
Id. at 1318-19.
Erby utilizes the theory of agency, alleging that unknown nurses and NMMC were negligent for failing, between the hours of 11:00 a.m. and 8:15 p.m., to monitor Cannon's blood sugar following his surgery on August 29, 1987. For our purposes here, we accept as true the testimony of Dr. Wooldridge that there existed a standing hospital order authorizing the nursing staff to draw blood for the purpose of monitoring blood sugar without the necessity of a direct order from a physician.
As noted previously, our general rule is that medical negligence may be established only by expert medical testimony, with an exception for instances where a layman can observe and understand the negligence as a matter of common sense and practical experience. This case does not appear to fall within the so-called "layman" exception.
However, Erby's affidavit certainly cannot be overlooked in view of her claim of recognizing a blood sugar problem, post surgery, concerning her father's condition. Her recognition of this perceived problem was based on her personal observations of her father and his diabetic condition for many years. She maintained that her concerns about the failure to monitor or test Cannon's blood sugar were reported to nurses several times during the nine hour period following surgery. *501 Despite her repeated requests to check Cannon's blood sugar, Erby claimed the nurses failed to act upon her complaints. Although we once again decline to find that this case falls within the "layman" exception, as we stated in Palmer v. Anderson Infirmary, "it may not be difficult for laymen to see a causal connection in this case." Also, contrary to the facts in that case, Erby produced expert testimony to sufficiently establish a causal connection in the case sub judice.
NMMC claims that Erby failed to create a triable issue of fact with regard to two essential ingredients of medical negligence, namely: (1) a breach by the nursing staff of its duty to conform to an acceptable standard of nursing care and (2) proof that this breach was the proximate cause or a contributing cause of Cannon's death.
With respect to a deviation from the usual and accepted standard of nursing care, Erby claims the following evidence created a fact issue: (1) the affidavit of Charlene Byrd, a registered nurse who asserted, under the trustworthiness of the official oath, that NMMC nurses deviated from the usual and accepted standard of nursing care by failing to monitor Cannon's blood sugar following his surgery on August 29, 1987; (2) the deposition of the defendant/physician Wooldridge, who testified there was a standing order for NMMC nurses to perform blood sugar testing on Cannon without the necessity of a direct order from a physician; and (3) the affidavit of Erby attesting to the fact that between the hours of 11:00 a.m. and 8:15 p.m. on August 29, 1987, she requested on more than one occasion that Cannon's "insulin level" be checked because his behavior following surgery indicated to her "something was wrong with his blood sugar level."
With respect to the question of causation, it is Erby's position that Cannon's death was caused by insulin insufficiency which precipitated a diabetic coma and other complications. Erby claims there was competent evidence supporting that position, namely: (1) the testimony by deposition of defendant/physician Hamilton that there were only two possible causes of death  diabetic coma or massive infection, and (2) the medical report of Dr. Koch reflecting that one of the causes of the diabetic coma was the total lack of blood sugar monitoring by medical personnel.
This brings us to the question of whether or not the medical expert testimony was sufficiently significant and probative with respect to the matter of proximate causation. Erby contends she demonstrated to the trial court a triable issue of fact concerning the cause of Cannon's death. She points to Cannon's medical records and the Certificate of Death in contending that the dispute as to the precise medical cause of death satisfies her burden of producing evidence of a causal connection between her theory of negligence against NMMC and her father's death. A fair interpretation of the medical report of Dr. Koch indicates that a failure to monitor blood sugar on the evening prior to or on the morning of surgery resulted in medical conditions which caused Cannon's "cerebral edema and his demise." Also, Dr. Hamilton's deposition indicates that diabetic coma was one of two possible causes of Cannon's death.
The pivotal inquiry is whether Erby produced sufficiently significant and probative expert medical testimony establishing that the failure of the nursing staff to monitor Cannon's level of blood sugar between the hours of 11:00 a.m. and 8:15 p.m., even though there was a standing order authorizing the nurses to do so without an order from a physician, caused or contributed to Cannon's death. Although the question is close, we hold that sufficient proof was established by Erby to proceed with her case.
Although the primary target of Dr. Koch's report was physicians, rather than nurses, Dr. Koch's report is replete with references to deviations from accepted standards of care and does implicate nursing conduct. Dr. Koch stated:
To have a comatose patient on a regular medical floor for 48 if not 72 hours is a deviation from the acceptable standards of care. Patients with this degree of metabolic disturbance need extremely close nursing care with diligence paid to their fluid intake and urine output as well as close monitoring of their vital and neurological signs.
*502 Byrd's affidavit opined that NMMC nurses deviated from the usual and accepted standard of nursing care by failing to monitor or test Cannon's level of blood sugar for 9 hours, 15 minutes following his surgery.
Erby's affidavit confirms her numerous complaints to the nurses, post surgery, of the need to check Cannon's blood sugar. Based upon many years of observation of her father and his diabetic condition, Erby concluded that the symptoms that she observed post surgery were indicative of a blood sugar problem. She indicated that despite her many complaints, no blood monitoring or testing was conducted by the nurses. The testimony of Dr. Wooldridge clearly reflected a standing hospital order authorizing nurses to draw blood for the purpose of monitoring blood sugar without the necessity of a direct order from a physician.
This Court's recent decision in Palmer v. Anderson Infirmary Benevolent Association DBA Jeff Anderson Regional Medical Center requires reversal of this case on the ground that summary judgment was inappropriate. Erby's evidence is much stronger than that presented in Palmer, where a violation of Rule 1202.3, Minimum Standards of Operation for Mississippi Hospitals, requiring a first assistant physician to be present to assist the primary physician in major surgery was held sufficient to defeat summary judgment. In Palmer, the testimony of only one medical expert was presented, and he could state no opinion on the proximate cause issue.
The combination of all of Erby's evidence established sufficient significant and probative proof on the issue of proximate causation of Cannon's death. Clearly there existed genuine issues of material fact sufficient to avoid summary judgment. The trial court erroneously granted summary judgment in favor of the unknown nurses and NMMC.

THE PROTECTIVE ORDER
Erby requested further depositions, based upon evidence discovered during the physicians' depositions. NMMC filed a Motion for a Protective Order on June 13, 1991, maintaining that Erby was attempting to keep the record open indefinitely. The newly requested depositions were scheduled for June 19, 1991. The Protective Order was not granted by the trial court until July 16, 1991, almost one month subsequent to the scheduled depositions. Obviously, there was sufficient time for the depositions to have been taken by Erby.
The issue of whether to grant additional requested discovery, although clearly discretionary with the trial judge, also mandates fairness to all parties. This Court in Cunningham v. Lanier, 555 So.2d 685 (Miss. 1989), observed that the rules of civil procedure should be liberally construed to permit a party to file amendments or documents in opposition to a motion for summary judgment. The Court further emphasized:
Justice is served when a fair opportunity to oppose a motion is provided  because consideration of a motion for summary judgment requires a careful review by the trial court of all pertinent evidence in a light most favorable to the nonmovant.

Id. at 686. In Smith v. H.C. Bailey, 477 So.2d 224, 233 (Miss. 1985), this Court reaffirmed its position that a non-moving party desiring to avoid summary judgment must be diligent in opposing summary judgment. See also Magee v. Transcontinental Gas Pipeline, 551 So.2d 182, 186 (Miss. 1989), and Bourn v. Tomlinson, 456 So.2d 747 (Miss. 1984). It is equally clear that the non-moving party in opposing summary judgment must be given a fair opportunity to be diligent. As this Court noted in Smith, Rule 56 "contemplates that completion of discovery ... is desirable and necessary before a court can determine that there are no genuine issues as to material fact." 477 So.2d at 232.
Where a request for additional time to gather material evidence is properly and timely made, and the request refused by the trial court, this Court has reversed "on the basis that `fairness required a continuance of limited duration to afford ... plaintiff the opportunity to go forward, if possible, with her case.'" McQueen v. Williams, 587 So.2d 918, 923-24 (Miss. 1991), quoting Hudson v. Parvin, 511 So.2d 499, 500 (Miss. 1987). In Hudson, also a case of medical negligence, *503 the Court was of the opinion that the physician's motion for summary judgment was "hastily granted," and noted that while the decision is certainly discretionary with the trial court, under "certain circumstances, the failure to grant a continuance may well be an abuse of discretion." 511 So.2d at 500, citing Terrell v. Rankin, 511 So.2d 126 (Miss. 1987).
The trial court failed to render its decision on NMMC's motion for a protective order until July 16, 1991. More than ample time passed during which Erby could have completed the two additional requested depositions. Under the circumstances, principles of fairness dictate a decision in favor of allowing these additional depositions which would not have unnecessarily prolonged the proceedings. In fact, the additional depositions, which had already been scheduled, would have been taken over one month prior to the lower court's order denying the request to take them. Erby's request was not unreasonable as it resulted from newly discovered information taken during the physicians' depositions, all of which were in the possession and control of the physicians and NMMC. The trial court abused its discretion.

CONCLUSION
Erby's proof was sufficiently significant and probative with respect to a deviation by the nursing staff from the usual and accepted standard of nursing care which may have proximately caused or contributed to Cannon's death. A genuine issue of material fact was created by the report of Dr. Koch, the affidavit of Byrd, the depositions of Dr. Wooldridge and Dr. Hamilton and Erby's own affidavit.
Fairness dictates that the allowance of the two additional depositions would not have unnecessarily prolonged the record to the extent requiring the closure by the trial court. The trial court, under the facts of this case, abused its discretion in denying the additional discovery.
REVERSED AND REMANDED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
JAMES L. ROBERTS, Jr., J., not participating.