# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-00273-COA

**JUSTIN ESTESS, M.D.**                                                        **APPELLANT**

**v.**

**FORREST HEALTH SYSTEM, FORREST**                              **APPELLEES**
**GENERAL HOSPITAL AND PINE GROVE**
**BEHAVIORAL HEALTH & ADDICTION**
**SERVICES**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/05/2024 |
| TRIAL JUDGE: | HON. JON MARK WEATHERS |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOHN G. HOLADAY |
| ATTORNEYS FOR APPELLEES: | MATTHEW D. MILLER |
| | NICHOLAS KANE THOMPSON |
| | ANDREA BOYLES PACIFIC |
| | RACHEL ELIZABETH GHOLSON |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | AFFIRMED - 08/26/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., McDONALD AND LASSITTER ST. PÉ, JJ.**

**McDONALD, J., FOR THE COURT:**

¶1.     Justin Estess, M.D., appeals from the Forrest County Circuit Court's grant of summary judgment in favor of Forrest General Hospital on his claims of negligence and breach of contract. Estess contends that the case was not a medical negligence claim, and thus, he did not need to present support from a medical expert. He also argues that the court improperly entered summary judgment on his general negligence and contract claims. Having reviewed the record, arguments of counsel, and relevant precedent, we affirm the circuit court's judgment.

**FACTS AND PROCEDURAL HISTORY**

¶2. Estess is a licensed physician in Mississippi with a specialization in anesthesiology and interventional pain. In 2013, after sustaining a back injury, he began treatment with opioid medications. Subsequently, Estess developed an opioid addiction, and in 2017, he was diagnosed with Opioid Use Disorder. As a result, Estess's medical license was restricted from the practice of pain medicine.

*The Mississippi Physician Health Program*

¶3. To regain full medical privileges, including the practice of pain medicine, Estess entered into a two-year agreement with the Mississippi Physician Health Program ("MPHP"). Estess's counsel stated that MPHP is a division of the Mississippi Board of Medical Licensure. He further stated that when doctors face addiction, MPHP provides them with treatment center options from their partner network, allowing the doctors to choose an appropriate treatment site. These sites are located throughout the United States. MPHP provides the treatment centers with the doctor's job duties specifying what the doctor can and cannot do until treatment is complete. Then, the treatment centers communicate with MPHP, providing patient updates and recommendations regarding any restrictions on the doctor's medical license. One of MPHP's approved facilities is Pine Grove Behavioral Health & Addiction Services ("Pine Grove"), located in Hattiesburg, Mississippi. Pine Grove is a facility operated by (and is a subsidiary of) Forrest General Hospital ("FGH").

*The Treating Facility: Pine Grove*

¶4. Pine Grove provides both inpatient and outpatient treatment. Pine Grove offered

2

treatment through the Next Step program, and then the Professional Enhancement Program ("PEP"). Physicians are required to undergo polygraph examinations as a component of MPHP's program requirements. Pine Grove used a third-party polygraph examiner, Clayton Polygraph LLC ("Clayton"), to administer all polygraph tests and a new eye detection technology, EyeDetect tests, which had been developed by Converus Inc. The polygraph tests related to a participant's use of narcotics for addiction-treatment evaluation and various other topics.

*Estess's Addiction Treatment*

¶5.     From February 2017 through June 2017, Estess underwent treatment through Pine Grove's Next Step and PEP program. He was enrolled in Next Step for sixty days, and he participated in PEP for forty-five days. Subsequently, Estess received outpatient treatment from another facility "A Bridge to Recovery," located in Ridgeland, MS." During his overall enrollment with Pine Grove, Estess was given a total of seven polygraph tests and two EyeDetect tests.

¶6.     In 2018, Estess returned to PEP and completed a five-day re-evaluation. PEP's ultimate recommendation was that he did not need to return to PEP for an evaluation unless he wished to resume the full unrestricted practice of pain medicine.

¶7.     After completing the two-year contractual agreement with MPHP, Estess wished to resume the full unrestricted practice of pain medicine. Accordingly, Estess returned to PEP in September 2019 for another five-day re-evaluation to receive a recommendation to resume his full practice. In the evaluation, Estess underwent at least two polygraph examinations

and EyeDetect examinations.

*The Recommendation*

¶8.    Following Estess's re-evaluation, Estess said that Pine Grove made a recommendation to MPHP that he was not currently fit to practice medicine and would need to complete additional treatment at an MPHP approved facility. Presumably, this was because Estess failed his polygraph tests. As a result of the negative recommendation, Estess was required to extend his contractual agreement with MPHP for an additional three months. During this three-month period, Estess's medical license remained restricted, preventing him from practicing pain medicine.

¶9.    Following the unsuccessful evaluation, Estess said he sought to have Pine Grove alter its recommendation and support his position by providing the program with objective medical testing, medical literature, surgical reports, and testimonies of those with whom he shared a close working relationship.[1] Estess said his attempts to convince Pine Grove were unsuccessful and there were no changes to MPHP's recommendation.

*Notice of Claim Letters*

¶10.   On June 29, 2020, Estess sent Notice of Claim letters to Andy Woodard, Chief Executive Officer of Forrest Health System and Forrest General Hospital, as well as Debbie Sanford, Chief Officer of Pine Grove Behavioral Health & Addiction Services. The Notice of Claim also applied to any employees involved in the circumstances surrounding the claim. Those employees' names could be found within Estess's medical records, specifically

---

[1] None of this material is described in detail, nor was any of it made a part of the record.

4

referring to Peter Kamp, M.D., and Sally J. Moody, LCSW.  Estess indicated in the Notice of Claim letters that he was sending the letters "according to Miss. Code Ann. § 11-46-11 and Miss. Code Ann. § 15-1-36."  Estess alleged that his claim arose from FGH and Pine Grove's failure to provide him with a proper treatment protocol.  Estess asserted that this failure constituted an intentional, reckless, and negligent breach of their duties.  Among these breaches, Estess contended that FGH improperly relied on unreliable polygraph tests, alleging they did not work on him because of his pre-existing medical condition.[2]  Further, Estess alleged that despite knowing these tests were unreliable, FGH and Pine Grove failed to disclose it for MPHP to consider in its evaluation.  Additionally, Estess claimed that FGH and Pine Grove altered his medical records.

*Complaint and Discovery*

¶11.   On December 18, 2020, Estess filed suit in the Forrest County Circuit Court against Forrest Health System ("FHS"), FGH, Pine Grove, and John Does 1-10 for $2,000,000 in damages.  Estess alleged he suffered economic damages and intangible harm, including emotional distress, mental anguish, and personal and professional reputational damage because of the negative MPHP recommendation.  Estess asserted that FHS, FGH, Pine Grove, and John Does 1-10's actions were negligent, grossly negligent, and reckless, breaching their duties by issuing a negative recommendation to MPHP.

---

[2]  Although he did not provide medical records, Estess claims he had a particular medical condition that would yield a false polygraph result.  In the transcript of the motion hearing, Estess stated, "[P]olygraphs don't work on me because I don't sweat because some of my parasympathetic system was removed when I was very young, so my body physiologically doesn't react in the same way that other people do when I get nervous.  And the polygraph results show that.  They are all over the place . . . ."

5

¶12.   Estess alleged that the negative recommendation was based on multiple breaches, including disregarding the historical unreliableness of polygraph tests, ignoring his pre-existing medical condition, and conducting biased interviews. He further claimed that key details of his fitness-to-practice evaluation were withheld from MPHP, that his medical records were altered, that opinions were presented as facts to MPHP, and that his return to practice in pain medicine was delayed.[3]

¶13.   Estess also alleged FHS, FGH, Pine Grove, and John Does 1-10 breached their contract with him for their services provided in the PEP and for their recommendation to MPHP. Estess stated this resulted from their failure to follow their own internal policies, the standards of care within the medical profession, and the mission of MPHP. Further, Estess asserted that their contract breaches were intentional, malicious, and wilful and were an independent tort. Estess pleaded that the contract was attached as an exhibit. However, his attached contract was not an agreement with Pine Grove but, rather, with his other outpatient care facility, A Bridge to Recovery, which was not affiliated with FGH.

¶14.   Finally, Estess alleged that FHS, FGH, Pine Grove, and John Does 1-10 knowingly provided false and defamatory information to MPHP.

¶15.   On May 12, 2021, FGH filed its answer with twenty-eight defenses to Estess's complaint. Among the defenses, FGH alleged that FHS and Pine Grove were not separate legal entities and, therefore, were improper parties to the lawsuit. They claimed that they were extensions of FGH, a community hospital. They also pointed out that FGH filed a

---

[3] The record contains no specifics of what was withheld or any documents establishing an alteration of his medical records, nor do we know who was interviewed.

6

separate motion to dismiss pursuant to Rule 12 of the Mississippi Rules of Civil Procedure on this basis. They also argued that Estess had failed to join indispensable parties, including Clayton, Clayton Polygraph Services LLC, and Converus Inc. FGH noted that Estess had filed a separate lawsuit against these parties in the same court (cause no. 18CI1:20-cv-00116) and asked the court to consolidate the two cases.[4]

¶16. On December 17, 2021, seven months after filing their response, FGH propounded interrogatories and requests for production of documents to Estess.[5] On that same day, FGH's counsel emailed the discovery to Estess's counsel, noting he should receive a physical copy that afternoon. This email was the first of four FGH sent during a ten-month period.

¶17. After two months of silence, on February 24, 2022, FGH sent a follow-up email to Estess's counsel noting that discovery responses were approximately thirty days overdue and requesting an estimated date to receive them. FGH also requested deposition dates, preferably in April or May. Estess's counsel remained unresponsive, causing FGH's counsel to send a follow-up email on June 2, 2022. This time, FGH requested discovery responses and deposition dates by no later than June 15, 2022. Again, Estess's counsel did not respond. Finally, on October 19, 2022, FGH's counsel sent a final follow-up email to Estess's counsel, requesting an update on the following issues: (1) discovery responses, (2) the proposed order waiving the medical privilege for Estess's medical records, and (3) deposition dates. FGH requested an email response, warning that failing to respond would give them no other choice

---

[4] The cases were not consolidated as of the time of the present appeal.

[5] In the interim, FGH had filed a "Motion to Preserve Immunity Defenses" and a "Motion to Compel Order Waiving the Medical Privilege as to Estess."

7

than to file a motion to compel. Still, Estess's counsel did not respond.

¶18. On December 21, 2022, FGH filed a motion to compel discovery responses and deposition dates. Yet again, Estess did not respond; however, FGH did not set this matter for a hearing to get a ruling.

*Motions to Dismiss or for Summary Judgment and Estess's Response*

¶19. Ten months later, on October 24, 2023, FGH filed a "Motion to Dismiss or for Summary Judgment," based on MRCP Rules 41 and 56. FGH argued that after thirty-four months, the case had not progressed. Further, Estess had failed to respond to discovery requests or otherwise engage in discovery. FGH contended that Estess's claim was not a general negligence claim but, rather, a medical negligence claim. Therefore, summary judgment was warranted because Estess failed to provide medical expert testimony to establish the standard of care and a breach of it, which are necessary elements of medical malpractice. Next, FGH argued that because Estess failed to produce or attach the contract with Pine Grove, his breach-of-contract claim must be dismissed.

¶20. On the same day, FHS and Pine Grove also filed their "Motion to Dismiss or for Summary Judgment." First, they claimed that FHS and Pine Grove should be dismissed because they were not legal entities. Further, they argued that Estess had not provided any contract with FHS or Pine Grove. They also raised the same arguments FGH had raised concerning the nature of the claim and Estess's lack of medical expert testimony.

¶21. On November 8, 2023, FGH filed a "Notice of Hearing on FGH's Motion to Dismiss or for Summary Judgment and FHS and Pine Grove's Motion to Dismiss or for Summary

8

Judgment," setting the matter for January 31, 2024.

¶22. On January 29, 2024, two days before the hearing, Estess filed his response to FGH's motion to dismiss or for summary judgment. Estess claimed he was attempting to consolidate this action with his pending suit against Clayton to avoid being deposed twice. Estess also claimed that he never refused to be deposed. Allegedly, the Clayton case experienced several delays, such as discovery disputes and counsel changes. Nonetheless, Estess stated the Clayton case was finally scheduled for trial in August 2024. Further, he alleged FGH was aware of his desire to consolidate because at the beginning of the suit, opposing counsel had held several telephone conferences discussing the Clayton case and case consolidation. However, Estess attached nothing to his response to support his claims that he attempted to consolidate the cases.

¶23. Next, Estess contended that he was not obligated to respond to the discovery requests because they were not timely propounded. According to his interpretation of Uniform Civil Rule of Circuit and County Court Practice 4.03(A), which states that "all discovery must be completed within ninety days from service of an answer by the applicable defendant," FGH had propounded its discovery too late. According to Estess's calculations, the discovery deadline was no later than August 10, 2021, but FGH did not propound discovery until December 17, 2021. Estess also argued that FGH failed to seek leave of court to conduct discovery beyond the August 10, 2021, deadline. FGH then waited for over a year to file a motion to compel. Essentially, Estess contended that FGH had unclean hands.

¶24. Estess further argued that he sued for general negligence, not medical negligence,

9

stating that the complaint was clear that his claims were for "garden variety" negligence. However, if the court considered his claim to be one of medical negligence, Estess maintained that he should have an opportunity to produce expert medical testimony either in discovery or at trial.

¶25. Concerning the contract claim, Estess argued that he filled out contractual documents when admitted to Pine Grove. He stated that the attachment of his contract with A Bridge to Recovery, rather than his contract with Pine Grove, was a clerical error made by his attorney's staff.[6]

¶26. Estess also filed his response to FHS and Pine Grove's "Motion to Dismiss or for Summary Judgment," which mirrored his response to FGH. Estess argued that as a subsidiary of FGH, Pine Grove should be subject to litigation. Further, Estess demanded that FGH provide documentation to confirm its assertion that Pine Grove was not a separate legal entity, arguing that the Court should "demand some documentation to be submitted which verifies defendant's claims." Ultimately, Estess conceded that FHS and Pine Grove could be dismissed if they were, in fact, only trade names and not separate legal entities.

*Motions Hearing*

¶27. On January 31, 2024, the circuit court heard arguments from the parties on the motions to dismiss and for summary judgment. FGH pointed out that the court was permitted to take judicial notice that a search of the Mississippi Secretary of State's website for businesses would confirm that FHS and Pine Grove did not exist as legal entities. Therefore,

---

[6] The Bridge to Recovery contract is dated June 19, 2017. The correct contract with Pine Grove was not part of the record.

10

they were unable to be sued and should be dismissed under Mississippi Rule of Civil Procedure 12(b)(6). FGH also argued Estess's claim was a medical malpractice claim arising from treatment he received in 2019. FGH further pointed out that under Mississippi Rule of Civil Procedure 41, the three-year delay in prosecuting the case and Estess's contumacious conduct in failing to cooperate in discovery supported its request for dismissal. Moreover, Estess had not provided any evidentiary support for his claims, including his failure to present a legal contract between him and FGH. Finally, FGH pointed out that Estess's claim of attempting to consolidate the current case and the Clayton case was false. Indeed, although the Clayton case was filed in August 2020, Estess had not advanced it either.

¶28. In response, Estess disputed FGH's claim that the primary issue in this case was medical negligence, asserting that his complaint centered on "garden variety" negligence. Therefore, since the central issue was not medical negligence, Estess argued, expert medical testimony was not required. Instead, he claimed the primary issue was FGH's negligent reliance on faulty polygraph tests (technology known to be unreliable) in recommending Estess's license not be reinstated.

¶29. Estess further responded that the reason he lacked discovery responses, affidavits, and depositions was that FGH had failed to provide affidavits to support its position. Because this was a motion to dismiss, Estess argued that he was not obligated to respond with affidavits or proof. Estess further contended that in the Clayton case, he had had several conversations with FGH, extensive litigation had occurred, and the trial date was set but changed due to FGH's lead counsel's health.

11

¶30. Estess further argued that he entered a contract with FGH when he completed admissions paperwork at Pine Grove, and he would update the court with the correct contract.[7]

¶31. In rebuttal, FGH argued that a three-year delay is sufficient to warrant dismissal under Rule 41. Further, under Mississippi Rule of Civil Procedure 56, Estess lacked evidence to prove the elements of what was most certainly a medical negligence claim, even if the face of the complaint raised a different issue. Estess's case, FGH contended, centered around treatment for substance use disorder at Pine Grove. The Pine Grove employees being accused of negligently evaluating the results were medical professionals. Therefore, this case was about medical negligence. However, FGH argued that even if Estess raised a general negligence claim, he had failed to produce any evidence to support it.

¶32. After hearing the arguments of the parties, the court dismissed FHS and Pine Grove. Further, the court stated that it would "take Rule 41(b), the alternative motion for summary judgment, and Rule 56(f) arguments under advisement."

*Court Ruling*

¶33. On February 1, 2024, the court issued its written order granting FHS and Pine Grove's motion to dismiss. The court found that FHS was a registered service mark owned by FGH, a political subdivision of the State of Mississippi, and that Pine Grove was a subsidiary of FGH and a facility that FGH operates. The court concluded that they have no legal existence or capacity to be sued, apart from FGH.

---

[7] Estess's contract with Pine Grove does not appear in the record, and we do not know if Estess ever provided the court with a copy of the correct contract.

12

¶34. In a separate order on February 5, 2024, the court granted FGH's motion for summary judgment. The court found that FGH met its burden for summary judgment because Estess lacked expert testimony to meet the elements of medical negligence, if such a cause of action was pled. Further, the court found that Estess's request to conduct discovery under Rule 56(f) should not be granted. Estess bore the burden of proving that discovery would rebut FGH's claim that there was not a genuine issue of fact, but during the hearing, Estess's counsel asserted that "he did not actually need any discovery. . . and he was ready to proceed to trial." Further, the court found that FGH was entitled to judgment as a matter of law on the contract claim because Estess did not provide admissible evidence to show a breach of contract. Finally, the court found that Estess's defamation claim was barred by the Mississippi Tort Claims Act, which gives government employees immunity against defamation claims under Mississippi Code Annotated section 11-46-5 (Rev. 2019).[8]

*Appeal*

¶35. On March 5, 2024, Estess appealed only the judgment in favor of FGH. On appeal, Estess argues (1) that the circuit court erred in finding that any of his claims were based on

---

[8] Mississippi Code Annotated section 11-46-5(1) provides:

Notwithstanding the immunity granted in Section 11-46-3, or the provisions of any other law to the contrary, the immunity of the state and its political subdivisions from claims for money damages arising out of the torts of such governmental entities and the torts of their employees while acting within the course and scope of their employment is hereby waived from and after July 1, 1993, as to the state, and from and after October 1, 1993, as to political subdivisions; provided, however, immunity of a governmental entity in any such case shall be waived only to the extent of the maximum amount of liability provided for in Section 11-46-15.

13

medical negligence, (2) that the circuit court erred when it dismissed his claims of general negligence, and (3) that the circuit court erred when it dismissed his claims for breach of contract and tortious breach of contract.

## STANDARD OF REVIEW

¶36. On appeal, we review the grant of a motion for summary judgment de novo, "viewing the evidence in the light most favorable to the non-moving party." *Loving v. MS Eye Care P.A.*, 381 So. 3d 1111, 1113 (¶6) (Miss. Ct. App. 2024). "The movant carries the burden of demonstrating that no genuine issue of material fact exists, and the non-moving party is given the benefit of the doubt as to the existence of a material fact." *ACE Am. Ins. Co. v. Hetsco Inc.*, 393 So. 3d 1015, 1021 (¶16) (Miss. 2024). Although we view the facts in the light most favorable to the non-moving party, "summary judgment 'is appropriate when the non-moving party has failed to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial.'" *Karpinsky v. Am. Nat. Ins. Co.*, 109 So. 3d 84, 89 (¶11) (Miss. 2013) (quoting *Buckel v. Chaney*, 47 So. 3d 148, 153 (¶10) (Miss. 2010)).

## DISCUSSION

### I. Whether the trial court erred in finding that Estess's claim was for medical negligence.

¶37. Estess contends that the circuit court erred in finding that his claim was for medical negligence. Instead, Estess argues that his claim is for "negligence, gross negligence, and recklessness." FGH responds that Estess's allegations—failure to properly evaluate him—were founded in medical negligence. Furthermore, FGH points out that Estess's

14

Notice of Claim letter stated that he was bringing suit pursuant to Mississippi Code Annotated section 15-1-36,[9] which is the statute concerning limitations applicable to malpractice actions arising from medical, surgical, or other professional services.[10]

¶38.   Mississippi law requires that a plaintiff prove the following elements "to establish a prima facie case of medical malpractice: . . . (1) the existence of a duty by the defendant to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) a failure to conform to the required standard; and (3) an injury to the plaintiff proximately caused by the breach of such duty by the defendant." *Stuart v. St. Dominic-Jackson Mem'l Hosp.*, 311 So. 3d 1192, 1202 (¶49) (Miss. Ct. App. 2020).

¶39.   "[W]hen a plaintiff fails to provide expert testimony establishing a prima facie case of medical malpractice, generally, a grant of summary judgment is required." *Mixon v. Berry*, 351 So. 3d 983, 988 (¶9) (Miss. Ct. App. 2022).  In *Mixon*, this Court held that a "defendant in a medical malpractice action may meet its summary judgment burden by

---

[9]  Mississippi Code Annotated section 15-1-36(1) provides:

For any claim accruing on or before June 30, 1998, and except as otherwise provided in this section, no claim in tort may be brought against a licensed physician, osteopath, dentist, hospital, institution for the aged or infirm, nurse, pharmacist, podiatrist, optometrist or chiropractor for injuries or wrongful death arising out of the course of medical, surgical or other professional services unless it is filed within two (2) years from the date the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered.

[10]  The Mississippi Supreme Court has explained the application of Mississippi Code Annotated section 15-1-36, concluding that it "applies to 'injuries or wrongful death arising out of the course of medical, surgical or other professional services[.]" *Crosthwait v. S. Health Corp. of Houston Inc.*, 94 So. 3d 1070, 1074 (¶13) (Miss. 2012) (quoting Miss. Code Ann. § 15-1-36(1) (Rev. 2003)).

15

pointing out to the court that the plaintiff has failed to produce sworn expert testimony supporting his or her allegations." *Id.* at 988 (¶11). More specifically, as a general rule, "medical negligence may be established *only* by expert medical testimony[.]" *Id.* at 987 (¶9) (emphasis added). "Without expert testimony establishing a prima facie case of medical negligence, no genuine issue of material fact exists[,]" and the "plaintiff cannot meet [his] burden of proof" in opposing the summary-judgment motion. *Id.* at 987-88.

¶40. The expert testimony requirement applies unless the negligent acts fall within the "layman's common knowledge" exception. *See Crosthwait v. S. Health Corp. of Houston Inc.*, 94 So. 3d 1126, 1130 (¶10) (Miss. Ct. App. 2011) (quoting *Powell v. Methodist Health Care-Jackson Hosps.*, 876 So. 2d 347, 348 (¶4) (Miss. 2004), *aff'd* 94 So. 3d 1070 (Miss 2012)). This exception applies when a layman can observe and understand that an incident was negligent by using common sense and practical experience. *Id.* at (¶12) (quoting *Erby v. N. Miss. Med. Ctr.*, 654 So. 2d 495, 500 (Miss. 1995)). However, in a malpractice action (a special kind of negligence claim), professional services are involved, and negligence must be proved by expert testimony. *Id.* at (¶10) (quoting *Barner v. Gorman*, 605 So. 2d 805, 809 (Miss. 1992)). "Medical or professional services," as recognized by the Court, include "all aspects of medical evaluation, treatment, and care that involve the application of special skill or knowledge." *Wolfe v. Delta Disc. Drugs Inc.*, 291 So. 3d 339, 342 (¶13) (Miss. 2020) (quoting *Bell v. W. Harrison Cnty. Dist.*, 523 So. 2d 1031, 1033 (Miss. 1988)).

¶41. "To distinguish between malpractice claims and ordinary negligence, a court should consider: "(1) whether the claim pertains to an action that occurred within the course of a

professional relationship; and (2) whether the claim raises questions of professional judgment beyond the realm of common knowledge and experience." *Crosthwait*, 94 So. 3d at 1130 (¶11).

¶42.    For example, in *Crosthwait*, an eighty-two-year-old hospital patient decided to take a shower. *Id*. at 1128 (¶¶2-3). At the instruction of her attending physician, Crosthwait contacted a nurse to assist her walk. *Id*. While the subsequent events were disputed, ultimately, Crosthwait fell and was significantly injured, including a broken hip, loss of mobility, and independence. *Id*. at 1128-29 (¶¶4-6). Crosthwait filed suit against the hospital and the nurse for ordinary negligence, alleging that the hospital negligently caused her to fall after taking a shower in her hospital room. *Id*. In response, the hospital filed a motion for summary judgment, arguing that Crosthwait's action was for medical malpractice, and because she did not provide expert testimony, summary judgment was proper. *Id*. at (¶7). In response, Crosthwait contended that the claim was for ordinary negligence, so expert testimony was not required. *Id*. The circuit court granted the hospital summary judgment, and Crosthwait appealed. *Id*. On appeal, we held that Crosthwait's claim arose from professional medical services. *Id*. at 1130 (¶11). Although showering was not necessarily a medical procedure, Crosthwait was an inpatient at the hospital. *Id*. She was following her physician's instructions to seek a nurse's assistance when using the restroom, and the nurse was acting in her capacity as a registered nurse when attending to Crosthwait, a patient in her care. *Id*. We next examined whether this incident fell within the layman's exception. *Id*. Crosthwait argued that the selection of a shower stool and drying the wet floor fell within a

17

layman's exception. *Id*. at 1130-31 (¶¶14,17). This argument also failed. *Id*. at 1132 (¶8). We determined that both scenarios required the exercise of professional judgment. *Id*. Therefore, Crosthwait's claims alleged medical negligence, requiring expert testimony. *Id*. at (¶19).

¶43. In the present case, Estess alleged but did not establish a prima facie case of medical malpractice because he failed to provide expert testimony, which is required in medical malpractice claims unless the alleged negligence falls within the layman's common knowledge exception. *Id*. at 1130 (¶10). However, Estess's allegations relate to the course of treatment, evaluation methods, and the use of polygraph testing—areas that are not within the ordinary understanding of a layperson. Determining the proper approach to addiction treatment and evaluating its effectiveness requires the exercise of professional judgment. Accordingly, the layman's exception does not apply to "situations involving judgment calls made by professionals." *Id*. at 1131 (¶14). Here, Estess's claims pertain to FGH's use of alleged faulty polygraph tests during his follow-up outpatient evaluation. In addition to the polygraph tests, Estess was given an addiction assessment, a psychiatric assessment, and a neuropsychological screening as an overall evaluation of his progress in addiction treatment. Conducting an outpatient evaluation, which was a follow-up from Estess's residential treatment, to determine whether a licensed physician with a specialization in anesthesiology and interventional pain has progressed enough in addiction treatment and was fit to practice medicine is hardly within the realm of common sense and practical experience.

¶44. Finally, the claim pertains to actions that occurred within Estess's and FGH's doctor-

18

patient relationship, a professional relationship. Moreover, the claim about FGH's faulty use of polygraph tests raises questions of professional judgment. These two distinguishing factors between malpractice and ordinary negligence make it clear that Estess's claim was for malpractice. Therefore, because Estess failed to provide an expert affidavit, the court was required to grant FGH's motion for summary judgment.

¶45. Estess himself claimed medical negligence in his Notice of Claim letter, which the Mississippi Supreme Court held is significant in *Wolfe*. In that case, the plaintiff was prescribed two milligrams of hydralazine to treat his high blood pressure. *Wolfe*, 291 So. 3d at 340 (¶3). He had this prescription filled at Delta Discount Drugs, where he was allegedly given twenty-five milligram tablets of hydroxyzine. *Id*. Less than a month later, he was hospitalized after blacking out while driving. *Id*. His physician indicated in her notes that he was given the wrong medication. *Id*. Further, the doctors explained to him that his medical complications were caused by the incorrect medication. *Id*. Approximately one year later, the plaintiff sent Delta a notice of claim letter indicating his intent to sue under section 15-1-36 for pharmaceutical negligence and resultant damages. *Id*. at (¶5). Specifically, his notice-of-claim letter stated, "he had no choice but to make a claim for pharmaceutical negligence." *Id*. More than two years and ten months later, Wolfe filed his complaint as "plain and simple negligence," arguing that the claim was no longer against the pharmacist but instead, against the pharmacy. *Id*. The Mississippi Supreme Court noted the importance of Wolfe's "prior characterization of the claims." *Id*. at 342 (¶16). Further, it reiterated that it has continuously "prohibited the misbranding of a claim . . . ." *Id*. at (¶17). "There can be

19

no escape from the bar of [a] statute of limitations . . . by the mere refusal to style the cause brought in a recognized statutory category and thereby circumvent prohibition of the statute." *Id*. Despite the plaintiff's current characterization of his claims against the defendant as plain and simple negligence, the principle undergirding these prior decisions applies with equal force here. *Id*.

¶46. Similar to *Wolfe*, in the instant case, Estess's Notice of Claim letter specifically indicated his intent to sue under section 15-1-36.[11] Estess then stated that FGH breached its duties by "failing to provide him with a proper treatment protocol," that "he entered into a contract with FGH for the treatment provided to him in the PEP at Pine Grove," and that there were numerous breaches in their contract, including FGH's "failure to follow the rules, regulations and procedures contained within the standards of care within the medical profession." These breaches of duties by FGH were of a professional nature.

¶47. Estess's prior characterization of the claim as medical malpractice under section 15-1-36 overrides Estess's current characterization of the claim as garden variety negligence. Further, Estess's claims about FGH's use of polygraph testing are grounded in medical malpractice and arise out of professional services received from FGH. The polygraph testing was conducted at the end of Pine Grove's outpatient PEP program as part of Estess's comprehensive substance abuse evaluation. This testing was one component of a structured process designed to evaluate whether the program had been successful for Estess, whether he had attained the goals of addiction recovery, and whether he was fit to resume the practice

---

[11] This statute is titled, "Limitations applicable to malpractice action arising from medical, surgical or other professional services."

of administering pain medicine. Given that polygraph testing is a specialized field, Pine Grove retained a third-party provider, Clayton, with specific expertise in this area to conduct the testing. Moreover, the polygraph testing related to Estess's prior use of narcotics, which was the basis for his enrollment in addiction treatment at Pine Grove. Thus, the trial court did not err when finding that Estess's claims were based, at least in part, in medical negligence given the content of the Notice of Claim letter and the professional nature of the polygraph services provided. As the Supreme Court established in *Wolfe*, claims involving medical or professional services include all aspects of medical evaluation, treatment, and care that involve the application of special skill or knowledge. *Wolfe*, 291 So. 3d at 342 (¶13). Estess's claim originating from professional services required him to provide expert testimony to defeat summary judgment. Therefore, the court was correct in granting summary judgment when Estess failed to produce expert testimony.

## II. Whether the trial court erred when it dismissed Estess's claim of general negligence.

¶48. Estess asserts that the trial court improperly dismissed his general negligence claim when it found that he failed to present evidence in response to FGH's motion for summary judgment. Estess argues, FGH's motion for summary judgment did not address his general negligence claim at all. As a result, when the trial court granted FGH's summary judgment motion on grounds not raised, i.e., sua sponte, Estess contends he was denied the opportunity to respond, constituting a violation of his due process rights. In addition, under Mississippi Rule of Civil Procedure Rule 56(c), Estess maintains that he was entitled to rely on the

21

allegations in his pleadings without presenting additional proof.[12]

¶49.    We agree that a trial court cannot sua sponte rule on issues not presented, as held in *Moore ex rel. A.T. v. Jackson Pub. Sch. Sys.*, 371 So. 3d 213, 214 (¶2) (Miss. Ct. App. 2023). In that case, we stated: "*Summary judgment cannot be granted on grounds not raised and properly supported in the **summary judgment motion***; the plaintiff is only required to produce evidence after the defendant has made a prima facie showing that it is entitled to summary judgment." *Id*. at 216-17 (¶13) (emphasis added).  In *Moore*, a special needs student at Rowan Middle School was assaulted on multiple occasions.  *Id*. at 214 (¶3). A.T.'s mother filed suit, alleging that JPS's negligence caused A.T.'s injuries and asserted causes of action for negligence, negligent infliction of emotional distress, and negligence per se. *Id*. at (¶5).  JPS answered the complaint, denied liability, and asserted various affirmative defenses.  *Id*.

¶50.    JPS then filed a motion for summary judgment, claiming it was entitled to judgment as a matter of law on two grounds: (1) Moore's claims flowed from a purported breach of a

---

[12]  Mississippi Rule of Civil Procedure 56(c) provides:

**Motion and Proceedings Thereon.**  The motion shall be served at least ten days before the time fixed for the hearing.  The adverse party prior to the day of the hearing may serve opposing affidavits.  The judgment sought shall be rendered forthwith *if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits*, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  A summary judgment, interlocutory in character, may be rendered on the issue of liability alone, although there is a genuine issue as to the amount of damages.

(Emphasis added).

statute or regulation (2) it was immune on all of Moore's claims, either under the general education statutes or the exemptions to liability provided by the Mississippi Tort Claims Act. *Id*. at (¶7). When the court denied JPS's motion, it filed a motion to amend pursuant to Mississippi Rule of Civil Procedure 59(e), further alleging that the circuit court lacked subject matter jurisdiction because JPS possessed sovereign immunity. *Id*. at (¶10). Ultimately, the circuit court granted JPS's amended motion for summary judgment, finding that Moore failed to provide evidence showing that a genuine issue of material fact existed. *Id*. at (¶11). Moore appealed, arguing, *inter alia*, that the circuit court erred by granting summary judgment on a ground that was not raised in JPS's summary judgment motion. *Id*. at (¶13). This Court agreed and stated:

> A court errs in granting summary judgment sua sponte on an issue not raised in the moving party's motion for summary judgment. The opposing party is entitled to notice and an opportunity to respond. Summary judgment cannot be granted on grounds not raised and properly supported in the summary judgment motion; the plaintiff is only required to produce evidence after the defendant has made a prima facie showing that it is entitled to summary judgment.

*Id*. We clarified that Moore was not obligated to produce evidence in response to JPS's motion for summary judgment because the motion only raised "legal arguments" and did not challenge the sufficiency of Moore's evidence on any essential element(s) of her claim. *Id*. at (¶16). Therefore, the circuit court improperly granted summary judgment on a ground that was "not raised and properly supported in [the defendant's] **summary judgment motion**." *Id*. (emphasis added).

¶51. In the case at hand, the circuit court appears to have made the same mistake as did the

trial court in *Moore*—the court granted summary judgment on an issue not raised. FGH admitted that it sought summary judgment only on Estess's medical negligence claim, not on his general negligence claim. But the court went further and found that Estess had also failed to provide support for a general negligence claim as well, which FGH never raised. In doing so, the court acted improperly under *Moore*. However, any error by the circuit court was harmless because the substance of Estess's claim sounded in medical negligence. For example, under his causes of action, Estess pled in part:

**Count I: Negligence, Gross Negligence, and Recklessness:**

15. Defendants, and their agents, representatives and employees had non-delegable duties to Dr. Estess which included but were not limited to the duty to:
Provide Dr. Estess with a proper treatment protocol; be diligent in their investigation of facts pertinent to Dr. Estess' treatment; conduct interviews of individuals with knowledge of facts pertinent to Dr. Estess' treatment; maintain accurate records of Dr. Estess' treatment and refrain from altering records relating to Dr. Estess' treatment; provide treatment to Dr. Estess consistent with the standard of care applicable to Defendants and their employees and agents; and abide in conformity with the standard of care of similarly situated governmental entities in the State of Mississippi

¶52. Further, in paragraph 16 of the complaint, Estess claimed FGH negligently breached duties owed him "pertinent to his treatment" and "failing to provide treatment consistent with the standard of care." As part of his damages, Estess sought a recovery of the cost of his "treatment." In paragraph 20, Estess made the claim that FGH breached their contract by "failing to provide treatment consistent with the standard of care within the medical profession." Elsewhere in the complaint, Estess pled that he voluntarily submitted "to treatment for his disorder at Pine Grove Behavioral Health & Addiction Services in

24

Hattiesburg, Mississippi, in that facility's Next Step and Professional Enhancement Program. Estess was clearly suing Pine Grove and FGH for the treatment these professionals provided, including submission to lie detector tests relating to his use of narcotics. Estess's claims for what he alleged was substandard care were claims for medical malpractice.

¶53.    As established in both *Crosthwait* and *Wolfe*, a party cannot circumvent the true nature of a claim by retitling it. If the substance of a complaint falls within a particular category, that category controls, regardless of how the complaint is titled. Nor can a party recharacterize a claim in order to avoid dismissal. *Wolfe*, 291 So. 3d at 342 (¶17). In this case, Estess pled a medical negligence claim that he attempted to rebrand as a general negligence claim. Accordingly, although the court apparently did rule on an issue sua sponte, any error was harmless.

### III.    Whether the circuit court erred when it dismissed Estess's claims of breach of contract and tortious breach of contract.

¶54.    Estess contends that the circuit court erred when it dismissed his claims of breach of contract and tortious breach of contract "on the exact same ground that it dismissed his negligence claims." Estess argues that because FGH's motion for summary judgment was unsupported—lacking an affidavit or any other evidence—the court should not have required him to present evidence in opposition to the motion because FGH failed to meet its initial burden. FGH contends that the circuit court properly dismissed Estess's contract claims because Estess never produced a valid contract between himself and FGH. The law is clear, and we find that Estess carried the burden of producing sufficient evidence to establish the elements of his contract claim, including producing the contract that he claimed was

25

breached.

¶55.   It is well established, and this Court recently held, that a breach-of-contract case has two elements: (1) the existence of a valid and binding contract, and (2) a showing that the defendant has broken, or breached it." *Designer Custom Homes LLC v. U.S. Coating Specialties & Supplies LLC*, 397 So. 3d 523, 528 (¶17) (Miss. Ct. App. 2024) (quoting *Maness v. K & A Enters. of Miss. LLC*, 250 So. 3d 402, 414 (¶43) (Miss. 2018)).

¶56.   In his complaint, Estess argued that he entered into a contract with FGH for its services in the PEP, under which FGH then had a duty to report to and make recommendations to MPHP.  Estess asserted that FGH breached those duties, including its duty to follow its own internal guidelines, procedures, and policies; its rules and regulations; the standards of care within the medical profession; and the principles and mission of MPHP and PEP.  However, Estess did not attach a contract between himself and Pine Grove or provide any evidence to show the existence of his contract with FGH.  Instead, Estess attached a contract for an entirely different facility—A Bridge to Recovery.  This facility is unaffiliated with Pine Grove.

¶57.   "Further, if at trial, the movant would bear the burden of proof, he also bears the burden of production at summary judgment."  *Maness*, 250 So. 3d at 409 (¶17).  A nonmovant may not sit idly nor "rest upon the mere allegations or denials of his pleadings." *Id*. (quoting M.R.C.P. 56(e)).  The nonmovant must respond "by affidavit or as otherwise provided in [Rule 56]," and he "must set forth specific facts showing that there is a genuine issue for trial." *Id*.  Further, "[i]f he does not so respond, summary judgment, if appropriate,

26

will be entered against him." *Id.*

¶58. Although Estess was not required to attach the contract when he filed the complaint,[13] he was still obligated to produce it at some point during the proceedings. While the contract was not necessary at the pleading stage, it goes without saying that the contract was the most essential part of the record for the court to properly consider the claim. Estess had two opportunities to produce the contract: (1) in his written response at the summary judgment stage, and (2) at the hearing, after he alleged that the incorrect contract was a clerical error by his staff and assured the court he would correct it. In the hearing for summary judgment, FGH argued that Estess did not provide evidence that meets either one of the two elements required to establish a breach-of-contract claim. Estess had provided documents to a facility unaffiliated with FGH and admitted to attaching the wrong contract to his complaint. Although this may have been a clerical error by his staff, the record does not reflect that Estess ever updated the record with the correct and valid contract between himself and Pine Grove.

¶59. In summary, Estess presumably completed documents for his admission to Pine Grove, and he argued that these documents constituted a contract between himself and Pine

---

[13] Effective April 13, 2000, Rule 10(d) of the Mississippi Rules of Civil Procedure was amended to suggest, rather than require, that documents on which a claim or defense is based be attached to a pleading. Then, effective December 26, 2024, Rule 10(d) was deleted entirely. Rule 10(d) previously stated:

> **Copy Must Be Attached**: When any claim or defense is founded on an account or other written instrument, a copy thereof should be attached to or filed with the pleading unless sufficient justification for its omission is stated in the pleading.

Grove. However, he did not attach them to the complaint or provide them at the hearing for summary judgment. The contract from A Bridge to Recovery was not sufficient to meet Estess's burden to show that he had a contract with FGH. As a result, by not submitting a valid and binding contract with FGH, Estess has failed to meet the two elements required for a breach of contract claim. Therefore, the trial court did not err when dismissing Estess's claims of breach of contract and tortious breach of contract.

## CONCLUSION

¶60. For the reasons discussed above, we affirm the circuit court's grant of summary judgment in favor of Forrest General Hospital.

¶61. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., WESTBROOKS, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**